**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**JUL 13 2015**

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION AT HELENA**

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> FORREST CITY READY MIX CONCRETE COMPANY d/b/a ARKANSAS CONCRETE COMPANY <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 2:15 -cv- 111-BRW <br> ) <br> ) This case assigned to District Judge Wilson <br> ) and to Magistrate Judge Kay <br> ) <br> ) |

## COMPLAINT

Plaintiff Liberty Mutual Insurance Company ("Liberty" or "Surety"), by and through

counsel, states the following for its Complaint against Defendant Forrest City Ready Mix Concrete

Company d/b/a Arkansas Concrete Company ("ACC"):

### I.     PARTIES

1.     Liberty is a Massachusetts corporation with its principal place of business at

Liberty's corporate headquarters in Boston, Massachusetts, which is the location from which

Liberty's high level officers direct, control, and coordinate Liberty's corporate activities. Thus,

Liberty is a citizen of the State of Massachusetts for purposes of diversity jurisdiction. Liberty is

duly qualified and authorized to transact business within the State of Arkansas.

2.     Upon information and belief, ACC is an Arkansas corporation with its principal

place of business at ACC's corporate headquarters in Forrest City, Arkansas, which is the location

from which ACC's high level officers direct, control, and coordinate ACC's corporate activities.

Thus, ACC is a citizen of the State Arkansas for purposes of diversity jurisdiction.

## II.    JURISDICTION AND VENUE

3.      This Honorable Court possesses original jurisdiction over Liberty's Complaint under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and the matter in controversy is between citizens of different states.

4.      Venue is proper in the United States District Court for the Eastern District of Arkansas, Eastern Division at Helena, under 28 U.S.C. § 83(a) and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Liberty's claims occurred within Monroe County, Arkansas.

## III.    FACTUAL ALLEGATIONS

5.      At all relevant times, Liberty acted as surety for Hill Brothers Construction Company, Inc. ("HBCC") relative to various construction projects throughout the United States, including a number of construction projects within the State of Arkansas.

6.      As a condition of issuing performance, payment, and other types of surety bonds on behalf of HBCC, Liberty required HBCC (and others) to execute various general agreements of indemnity in favor of Liberty including, but not limited to, the January 19, 2009 General Agreement of Indemnity attached hereto as **Exhibit 1** (the "Indemnity Agreement").

7.      As set forth more fully in the Indemnity Agreement, HBCC qualified as one of the "Indemnitors" and one of the "Principals" thereunder.

8.      With respect to HBCC's assignment of its rights to Liberty relative to bonded projects, Paragraph THIRD of the Indemnity Agreement, entitled "ASSIGNMENT," provides:

> The Indemnitors hereby consenting do assign, transfer, pledge and convey to the Surety and agree to use their best efforts to cause to Principals to assign, transfer, pledge and convey to the Surety as collateral security for the full performance of the covenants and agreements herein contained, contained in Other Agreements and

for the payment of any other indebtedness or liability of the Indemnitors and/or Principals to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each contract being effective as of the date of the Bond covering such contract, the following: (a) **all the right, title and interest of the Indemnitors and/or Principals in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds**; (b) all the right, title and interest of the Indemnitors and/or Principals in and to all machinery, supplies, equipment, plant, tools and materials which are now or may hereafter be, about or upon the site or sites of any and all contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in the process of construction, in storage at the site or elsewhere, or in transportation to any and all sites; (c) **all the right, title and interest of the Indemnitors and/or Principals in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds**, and in and to all surety bonds supporting such subcontracts; (d) **all actions, causes of actions, claims and demands whatsoever which the Indemnitors and/or Principals may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, or other equipment in connection with or on account of any and all contracts referred to in the Bonds**; and against any surety or sureties of any subcontractor, laborer or materialman; and (e) any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Indemnitors or Principals have an interest; (f) all licenses, patents, copyrights and trade secrets; (g) all warehouse receipts, bills of lading and general intangibles; (h) all tax refunds and claims for tax refunds; and (i) all limited partnership and general partnership interests; **but only in the event of: (1) any abandonment, forfeiture or breach of any contract referred to in the Bonds or of any breach of any Bond; or (2) a default in discharging any other indebtedness or liabilities incurred in connection therewith, when due; or (3) any breach of the covenants and conditions of this Agreement or Other Agreements**, including but not limited to the failure to obtain from the Surety written approval of a Change in Control; or (4) an assignment by any Indemnitor or Principal for the benefit of creditors, or of the appointment or any application for the appointment, of a receiver or trustee for any Indemnitor or Principal whether insolvent or not; or (5) any proceeding which deprives the Indemnitor or Principal of the use of any of the machinery, supplies, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) any Indemnitor or Principal's death, absconding, disappearance, incompetence, insolvency, conviction of a felony, or imprisonment, if the Indemnitor or Principal be an Individual.  Principal(s) shall further obtain, maintain and assign all proceeds from insurance coverage as may be required by the Surety from insurance companies acceptable to Surety, including, as may be applicable, coverage for acts of terrorism.  Failure to obtain or maintain insurance coverages so required by Surety shall be a breach of this Agreement and shall permit Surety to demand cash

collateral from Principal(s) in an amount up to and including the full penal sum of any outstanding Bond(s).

(Emphasis added).

9.     With respect to HBCC's appointment of Liberty as its attorney-in-fact relative to the rights assigned to HBCC under Paragraph THIRD (detailed above), Paragraph EIGHTEENTH of the Indemnity Agreement, entitled "ATTORNEY-IN-FACT," further provides:

> The Indemnitors and Principals hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the full right and authority, but not the obligation, to exercise all the rights of the Indemnitors and Principals assigned, transferred and set over to the Surety in this Agreement, with full power and authority to execute on behalf of and sign the name of any Indemnitor and/or Principal to any voucher, financing statement, release, satisfaction, check, bill of sale of all or any property by this Agreement assigned to the Surety, or other documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Indemnitors and Principals hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact and agree to protect and hold harmless the Surety for acts herein granted as attorney-in-fact.

10.     In reliance upon the execution of the Indemnity Agreement by HBCC and others, Liberty issued Arkansas State Highway Commission Statutory Performance Bond No. 83B005941 (the "Performance Bond") and Arkansas State Highway Commission Statutory Payment Bond No. 83B005941 (the "Payment Bond") on behalf of HBCC in relation to a construction contract (the "Prime Contract") between HBCC and the Arkansas State Highway and Transportation Department (the "AHDOT") for a construction project in Monroe County, Arkansas commonly referred to as Roc Roe & White River Relief Structures and Approaches (the "Project"). Copies of the Performance Bond and the Payment Bond (collectively, the "Bonds") are attached hereto as **Exhibit 2**.

11.     On or about May 5, 2009, HBCC and ACC entered into Purchase Order Number 78400001 (the "Purchase Order"), a copy of which is attached hereto as **Exhibit 3** and under which, as set forth more fully therein, ACC agreed to furnish certain ready-mix concrete to HBCC for use on the Project in strict accordance with the terms, conditions, plans, and specifications of the Prime Contract.

12.     For example, with respect to ACC's duty to conform to the terms, conditions, plans, specifications of the Prime Contract, Paragraph 1 of the Purchase Order states, in pertinent part:

> All material, equipment and other items, including labor and services, if any, referenced in this Purchase Order (hereinafter collectively referred to as "Goods") **shall comply strictly with the terms, conditions, plans and specifications of the Prime Contract for the Project** indicated on the face page hereof, which contract is incorporated herein by reference and made an integral part of this Purchase Order . . . .

(Emphasis added).

13.     With respect to the warranties ACC extended to HBCC, Paragraph 2 of the Purchase Order states, in relevant part:

> In addition to other warranties, including descriptions, expressly set forth in this PO and in the Prime Contract incorporated by reference, Seller warrants that the Goods supplied hereunder **shall be: new; free from defects in design, workmanship and materials; fit for the purposes intended; and strictly in compliance with all plans and specifications** . . . . All warranties survive any inspection, delivery, acceptance or payment. Seller's warranties in this PO are in addition to any other warranties provided by law or by separate agreement . . . .

(Emphasis added).

14.     With respect to ACC's duty to defend/indemnify HBCC for any damages arising from any defective ready-mix concrete furnished by ACC, Paragraph 14 of the Purchase Order further provides:

> To the fullest extent allowed by law, Seller shall defend, indemnify, reimburse, save harmless and exonerate [HBCC] and the Owner from and against all claims, liabilities, losses, expenses and damages, of whatever nature, including without

limitation, attorneys' fees and consequential damages, **which are alleged to arise from or be caused by, in whole or in part, any act or omission of Seller with respect to this PO or to the subject Project**. Seller's obligations under this paragraph shall apply to any personal injury, sickness, death, property damage, economic loss and additional expense of any kind **for which Seller's conduct or Goods are alleged as a cause or contributing factor**. Seller's indemnity and defense obligations shall survive acceptance and payment of the Goods. Should any delay by Seller, nonconformance of Goods, or nonperformance by Seller cause or contribute to any delay to the Project or to any increased costs, losses, or consequential damages to [HBCC] or to the Owner, Seller shall pay, indemnify and exonerate [HBCC] for any liquidated or actual damages assessed by the Owner against [HBCC] and also for [HBCC]'s costs, expenses, and losses, including attorneys' fees and consequential damages.

(Emphasis added).

15.     Upon information and belief, ACC unilaterally directed that ice be introduced into the ready-mix concrete furnished to HBCC on the Project during the pour process to meet the Prime Contract's temperature requirements.

16.     However, as reflected by the photographs collectively attached hereto as **Exhibit 4**, the AHDOT discovered the existence of numerous plastic ice bags in the ready-mix concrete ACC furnished to HBCC in approximately seven different locations of the Project and determined that the existence of said ice bags rendered that portion of HBCC's work to be defective under the Prime Contract.

17.     As reflected by the October 16, 2012 letter attached hereto as **Exhibit 5**, HBCC formally notified ACC of HBCC's potential claim against ACC relative to any damages arising from the discovery of the ice bags in the ready-mix concrete ACC furnished to HBCC.

18.     As a direct and proximate result of the discovery of the ice bags in the ready-mix concrete ACC furnished to HBCC, HBCC was required to retain third-parties to perform extensive non-destructive and destructive testing relative to the ready-mix concrete ACC furnished on the

Project to determine how many ice bags may exist therein, the costs/expenses of which totaled $86,811.82.

19.     In addition to the significant costs/expenses associated with the required testing, and as reflected by the December 12, 2012 correspondence collectively attached hereto as **Exhibit 6**, HBCC was required to, among other things, issue a special warranty to the AHDOT relative to the ready-mix concrete ACC furnished to HBCC.

20.     ACC failed to defend, indemnify, reimburse, save harmless, and/or exonerate HBCC relative to the claims, liabilities, losses, expenses, and damages arising from the discovery/existence of the ice bags in the ready-mix concrete ACC furnished to HBCC.

21.     Moreover, HBCC has breached the Prime Contract, has defaulted in discharging indebtedness/liabilities incurred in connection with the Prime Contract and other bonded contracts when due, and has otherwise breached the covenants and conditions of the Indemnity Agreement, which has triggered the assignment provision of the Indemnity Agreement discussed in Paragraph 8 above.

22.     Liberty was also forced to perform and sustained losses under the Bonds and thereby became equitably subrogated to HBCC's rights against others relative to the Project including, but not limited to, HBCC's claims against ACC.

23.     As reflected by the April 29, 2015 letter from Liberty's counsel to ACC attached hereto as **Exhibit 7**, Liberty has demanded that ACC tender payment to Liberty in the amount of $86,811.82 relative to the damages to HBCC arising from the defective ready-mix concrete ACC furnished to HBCC on the Project.

24.     However, ACC has not responded to Liberty's demand.

## IV.    CAUSES OF ACTION

### Breach of the Purchase Order

25.     Liberty restates the foregoing allegations of its Complaint as though fully set forth herein.

26.     As set forth more fully in the Purchase Order, all ready-mix concrete ACC furnished to HBCC relative to the Project was required to strictly comply with the terms, conditions, plans, and specifications of the Prime Contract.

27.     As set forth more fully in the Purchase Order, ACC expressly warranted that all ready-mix concrete ACC furnished to HBCC on the Project would be new, would be free from defects in design, workmanship, and/or materials, would be fit for the purposes intended, and would strictly comply with all plans and specifications of the Project.

28.     As set forth more fully in the Purchase Order, ACC was obligated to defend, indemnify, reimburse, save harmless, and exonerate HBCC from and against all claims, liabilities, losses, expenses, and damages arising from the defective ready-mix concrete ACC furnished to HBCC relative to the Project.

29.     ACC materially breached the Purchase Order and the terms, conditions, plans, specifications of the Prime Contract by furnishing defective ready-mix concrete to HBCC on the project that was contaminated by the existence of plastic ice bags.

30.     ACC also materially breached the Purchase Order by failing to defend, indemnify, reimburse, save harmless, and exonerate HBCC from and against all claims, liabilities, losses, expenses, and damages arising from the defective ready-mix concrete ACC furnished to HBCC on the Project including, but not limited to, reimbursing HBCC for the $86,811.82 in cost/expenses

HBCC incurred while performing non-destructive/instructive testing relative to the existence of the ice bags.

31.     As a direct and proximate result of ACC's material breach of the Purchase Order, HBCC sustained damages in excess of $86,811.82.

32.     By virtue of its rights as the assignee and the equitable subrogee of HBCC's claims against ACC for breach of the Purchase Order, Liberty is entitled to the entry of judgment against ACC in an amount sufficient to fully defend, indemnify, reimburse, save harmless, and exonerate HBCC from and against all claims, liabilities, losses, expenses, and damages arising from the ready-mix concrete ACC furnished to HBCC relative to the Project, which amount currently exceeds $86,811.82 and will be proven at trial.

### Negligence

33.     Liberty hereby restates the foregoing allegations of its Complaint as though fully set forth herein.

34.     At all relevant times, ACC owed HBCC and the AHDOT a duty to exercise ordinary care to prevent the ready-mix concrete ACC furnished to HBCC relative to the Project from becoming contaminated with foreign items/substances, such as ice bags.

35.     ACC breached the duty of care it owed to HBCC and the AHDOT by allowing the ready-mix concrete ACC furnished to HBCC on the Project to become contaminated with plastic ice bags.

36.     As a direct and proximate result of ACC's breach of its duty of care to HBCC and the AHDOT, HBCC sustained damages in excess of $86,811.82.

37.     By virtue of its rights as the assignee and equitable subrogee of HBCC's claims and the equitable subrogee of and the AHDOT's claims against ACC for negligence, Liberty is entitled

to the entry of judgment against ACC in an amount sufficient to reimburse HBCC for the damages

directly and proximately arising from ACC's breach of its duty to care to HBCC and the AHDOT

relative to the ready-mix concrete ACC furnished to HBCC on the Project, which amount currently

exceeds $86,811.82 and will be proven at trial.

WHEREFORE, PREMISES CONSIDERED, Liberty prays for the following relief:

1. That proper process issue requiring the ACC to answer Liberty's Complaint;

2. For judgment against ACC in an amount sufficient to fully defend, indemnify, reimburse, save harmless, and exonerate HBCC from and against all claims, liabilities, losses, expenses, and damages arising from the ready-mix concrete ACC furnished to HBCC relative to the Project, which amount currently exceeds $86,811.82 and will be proven at trial;

3. For judgment against ACC in an amount sufficient to reimburse HBCC for the damages directly and proximately arising from ACC's breach of its duty to care to HBCC and the AHDOT relative to the ready-mix concrete ACC furnished to HBCC on the Project, which amount currently exceeds $86,811.82 and will be proven at trial; and

4. For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, attorneys' fees, pre-judgment interest, and post-judgment interest.

Respectfully submitted,

Jarrod W. Stone      Tenn. BPR No. 023915
MANIER & HEROD
One Nashville Place, Suite 2200
150 Fourth Avenue North
Nashville, Tennessee 37219
Phone: (615) 244-0030
Fax: (615) 242-4203
jstone@manierherod.com
(Admitted in Eastern District of Arkansas on August 21, 2014)

Attorneys for Liberty Mutual Insurance Company

# EXHIBIT 1



# General Agreement of Indemnity

This General Agreement of Indemnity (hereinafter the "Agreement") is made and entered into by the following individuals, partnerships, corporations, and/or other business entities, as applicable, Hill Brothers Construction Co., Inc.; Purnell Construction Company, LLC; Eric N. A. Purnell; Bernadette A.D. Purnell   (individually and collectively hereinafter called the "Indemnitor(s)") jointly and severally, in favor of Liberty Mutual Insurance Company, Employers Insurance Company of Wausau (formerly "EMPLOYERS INSURANCE OF WAUSAU A Mutual Company"), Peerless Insurance Company, and any other company that is part of or added to the Liberty Mutual Surety, severally not jointly, and for which Liberty Mutual Surety underwrites surety business (individually and collectively hereinafter called the "Surety") with respect to any surety bond, undertaking, recognizance, instrument of guarantee or other surety obligations (hereinafter called the "Bond(s)") requested from and/or issued by the Surety before or after the date of this Agreement, for  i) Hill Brothers Construction Co., Inc.; Purnell Construction Company, LLC; Eric N.A. Purnell; Bernadette A.D. Purnell; and any Indemnitor added hereto by Amendment; ii) any of the Indemnitors or Principals' subsidiaries or affiliates, whether present or future, and whether directly or indirectly held; and iii) any other entity or person in response to a request from any Indemnitor or Principal named herein, and, as to all of the foregoing, whether they act alone or in joint venture with others and whether or not said others are named herein (individually and collectively hereinafter called the "Principal(s)").

## WITNESSETH

WHEREAS, the Indemnitors and Principals, in the performance of contracts and the fulfillment of obligations generally, whether in their own names solely or as co-adventurers with others, may desire, request, or be required to give or procure certain Bonds, and/or to renew, continue, extend or substitute, from time to time, the same or new Bonds with the same or different penalties, and/or conditions, as may be desired, requested or required, in the renewal, continuation, extension and/or substitution thereof; or the Indemnitors or Principals may request the Surety to refrain from canceling the Bonds; and

WHEREAS, at the request of the Indemnitors and with both the express understanding that this Agreement be given and in reliance upon this Agreement, the Surety has heretofore or has presently been requested to and/or has executed or has procured to be executed, and, from time to time hereafter, may be requested to and/or may execute or may procure to be executed, the Bonds on behalf of the Principals; and

WHEREAS, the Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from canceling any or all Bonds.

NOW, THEREFORE, in consideration of the premises, and intending to be legally bound hereby, the Indemnitors and Principals for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

FIRST: **PREMIUMS** - The Indemnitors and Principals will pay to the Surety, promptly upon demand, all premiums, costs and charges of the Surety for any Bonds requested from and/or issued by the Surety in accordance with its rate filings, its manual of rates as determined by the Surety, or as otherwise determined by the Surety, and where such premium, costs and charges are annual, continue to pay the same until the Indemnitors or Principals shall deliver evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

SECOND: **INDEMNITY** – The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs and expenses of whatsoever kind or nature including, but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of a breach of this Agreement or a breach of any other written agreements between or for the benefit of the Surety and the Indemnitor(s) and/or Principal(s) (hereinafter referred to as "Other Agreements"), court costs, counsel fees, accounting, engineering and any other outside consulting fees and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur: (1) by reason of being requested to execute or procure the execution of any Bond; or (2) by having executed or procured the execution of any Bond; or (3) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or Other Agreements; or (4) in enforcing any of the covenants and conditions of this Agreement or Other Agreements. Payment by reason of the aforesaid causes shall be made to the Surety by the Indemnitors and/or Principals promptly, upon demand by the Surety, whether or not the Surety shall have made any payment therefor and, at the Surety's sole option, irrespective of any deposit of collateral.  If the Surety determines, in its sole judgment, that potential liability exists for losses and/or fees, costs and expenses for which the Indemnitors and/or Principals will be obliged to indemnify the Surety under the terms of this Agreement or Other Agreements, the Indemnitors and/or Principals shall deposit with the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability, whether or not the Surety has: (a) established or increased any reserve; (b) made any payments; or (c) received any notice of any claims therefor.  At the Surety's sole option, such collateral shall be in addition to and not in lieu of any other collateral that has been previously provided to the Surety.  The Surety shall have the right to use any collateral, or any part thereof, in payment or settlement of any such liabilities for which the Indemnitors and Principals would be obliged to indemnify the Surety under the terms of this Agreement or Other Agreements.  In the event of any payment by the Surety, the Indemnitors and Principals further agree that in any accounting between the Surety and the Principals, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement or Other Agreements under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.  Surety shall have no obligation to invest or provide a return on any collateral provided to it under this Agreement.

THIRD: **ASSIGNMENT** - The Indemnitors hereby consenting do assign, transfer, pledge and convey to the Surety and agree to use their best efforts to cause the Principals to assign, transfer, pledge and convey to the Surety as collateral security for the full performance of the covenants and agreements herein contained, contained in Other Agreements and for the payment of any other indebtedness or liability of the Indemnitors and/or Principals to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each contract being effective as of the date of the Bond covering such contract, the following: (a) all the right, title and interest of the Indemnitors and/or Principals in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; (b) all the right, title and interest of the Indemnitors and/or Principals in and to all machinery, supplies, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any

and all contracts referred to in the Bonds, materials which may be in the process of construction, in storage at the site or elsewhere, or in transportation to any and all sites; (c) all the right, title and interest of the Indemnitors and/or Principals in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) all actions, causes of actions, claims and demands whatsoever which the Indemnitors and/or Principals may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer or materialman; and (e) any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Indemnitors or Principals have an interest; (f) all licenses, patents, copyrights and trade secrets; (g) all warehouse receipts, bills of lading and general intangibles; (h) all tax refunds and claims for tax refunds; and (i) all limited partnership and general partnership interests; but only in the event of: (1) any abandonment, forfeiture or breach of any contract referred to in the Bonds or of any breach of any Bond; or (2) a default in discharging any other indebtedness or liabilities incurred in connection therewith, when due; or (3) any breach of the covenants and conditions of this Agreement or Other Agreements, including but not limited to the failure to obtain from the Surety written approval of a Change in Control; or (4) an assignment by any Indemnitor or Principal for the benefit of creditors, or of the appointment or any application for the appointment, of a receiver or trustee for any Indemnitor or Principal whether insolvent or not; or (5) any proceeding which deprives the Indemnitor or Principal of the use of any of the machinery, supplies, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) any Indemnitor or Principal's death, absconding, disappearance, incompetence, insolvency, conviction of a felony, or imprisonment, if the Indemnitor or Principal be an individual. Principal(s) shall further obtain, maintain and assign all proceeds from insurance coverage as may be required by the Surety from insurance companies acceptable to Surety, including, as may be applicable, coverage for acts of terrorism. Failure to obtain or maintain insurance coverages so required by Surety shall be a breach of this Agreement and shall permit Surety to demand cash collateral from Principal(s) in an amount up to and including the full penal sum of any outstanding Bond(s).

**FOURTH: UNIFORM COMMERCIAL CODE** - This Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity. A carbon, photographic or other reproduction of this Agreement may be filed as a Financing Statement.

**FIFTH: TAKEOVER** - In the event of any of the following: breach, default, or termination asserted by the obligee in any Bond; any Principal's abandonment of the work or forfeiture of any contract covered by any Bond, any Principal's failure to pay obligations incurred in connection therewith; or if the Principal is an individual, in the event of the Principal's death, absconding, disappearance, incompetence, insolvency, conviction of a felony, or imprisonment; the bankruptcy of any Principal; the appointment of a receiver or trustee for any Principal or for the property of any Principal; an assignment for the benefit of creditors of any Principal; if any action is taken by or against any Principal under or by virtue of the Federal Bankruptcy Code; should reorganization or arrangement proceedings be filed by or against any Principal under said Code; and/or if any action is taken by or against any Principal under the insolvency laws of any state, possession or territory of the United States, then the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or under the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by the Bonds, and the Indemnitors hereby agree to use their best efforts to cause the Principal to permit the Surety to take possession of any part or all of the work under any contract or contracts covered by the Bonds, at the expense of the Indemnitors and Principals, to complete or arrange for the completion of the same, and the Indemnitors and Principals shall promptly, upon demand, pay to the Surety all losses, fees, costs and expenses so incurred.

**SIXTH: CHANGES** - The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors or Principals, to assent to any change whatsoever in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Indemnitors. Indemnitors further represent and warrant to surety that they are currently informed and remain informed and apprised of Principal's or Principals' business activities, ventures and financial affairs, including but not limited to the type, size (single job and/or aggregate program), location and status of projects and contracts performed by Principal(s) and secured by Bond(s) executed, provided or procured by Surety. Surety has no obligation to inform the Indemnitors of any change in any aspect of Principal(s)' business activities or financial affairs.

**SEVENTH: ADVANCES** - The Surety is authorized and empowered, in its sole discretion and without any obligation to do so, to guarantee loans, to advance or lend to an Indemnitor or Principal any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds, or pursuant to any Other Agreements, and all money so expended, lent, advanced, or loans guaranteed from time to time to or on behalf of any such Indemnitor or Principal in connection therewith, including costs of investigation, administration, and/or in the completion of any contract by the Surety, and any and all other costs and expenses incurred by the Surety in relation thereto, unless repaid with interest at the maximum rate permitted by law by any Indemnitor or Principal to the Surety when due, shall be presumed to be a loss by the Surety for which the Indemnitors and Principals shall be responsible notwithstanding that said money or any part thereof should not be so used by any such Indemnitor or Principal.

**EIGHTH: BOOKS AND RECORDS** – Principal(s) and Indemnitor(s) shall provide to Surety within 120 days of their fiscal year end, financial statements prepared in accordance with Generally Accepted Accounting Principles, and reports prepared by reputable accounting firms prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services ("SARS"). If Principal(s) and/or Indemnitor(s) have reports prepared by reputable accounting firms in accordance with the AICPA's Statements on Auditing Standards in the ordinary course of their financial reporting, then such reports shall be supplied instead of the reports in accordance with SARS. Principal(s) and Indemnitor(s) shall also provide any management letters received from their accountants within 30 days of receipt. In addition to the foregoing, at any time, and until such time as the liability of the Surety under any and all Bonds is terminated, or the Surety is fully reimbursed all amounts due to it under this Agreement or Other Agreements, the Surety shall have the right of reasonable access to the books, records and/or accounts of the Indemnitors and Principals for the purpose of inspection, copying or reproduction; and any financial institution, depository, materialman, supply house or other person, firm or corporation is hereby specifically authorized by each Indemnitor and Principal to furnish the Surety, at the Surety's request, any information requested including but not limited to, financial and credit reports relating to the financial condition of the Indemnitors and/or Principals, and as to any bonded or non-bonded contract performed, in progress or awarded, the status of the work, the condition of the performance of such contracts and payments of accounts. The Indemnitors and Principals agree to provide any additional releases, requests, waivers or any other documents required in order to allow the Surety access to the requested information. Failure to provide the information required in this paragraph shall be a

breach of this Agreement, and shall entitle Surety to demand, in its sole discretion, cash collateral up to the penal sum of any outstanding Bond(s).

NINTH: **DECLINE EXECUTION** – The Surety, at its sole discretion, may decline to execute, renew or extend any Bond, including final bonds, and may cancel any Bond unless the Bond states otherwise, and the Indemnitors and Principals agree to make no claim to the contrary.  If the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any other Bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given, and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond.  The Indemnitors and Principals acknowledge that the Surety makes no representation as to the validity or acceptability of any Bond to any person, firm or entity of whatever sort or kind under any contract, and agree that they shall have no claim against the Surety arising out of or in any manner relating to the failure or refusal of any person, firm or entity of whatever sort or kind to award any contract to the Principals, or to accept any Bond executed and delivered by the Surety, or that the Surety has been requested to execute and delivery.

TENTH: **NOTICE OF EXECUTION** - The Indemnitors and Principals hereby waive notice of the execution of any Bond, the acceptance of this Agreement or Other Agreements, and of any change in surety credit or other fact that might materially alter the Indemnitors and Principals' obligations hereunder, and the Indemnitors and Principals hereby waive all notice of any default, or any other act or acts giving rise to any claim under any Bond, as well as notice of any and all liability of the Surety under any Bond, and any and all liability on their part hereunder, to the end and effect that, the Indemnitors and Principals shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might otherwise have been entitled to make as a result of lack of notice.

ELEVENTH: **TRUST FUND** – To the extent permitted under applicable law, the Indemnitors and Principals covenant and agree that all of their interest, title and rights in any contract or undertaking referred to in any Bond, or in, or growing in any manner out of any Bond, including but not limited to payments for or on account of any contract, shall be held as a trust fund and/or as a constructive or equitable trust in which the Surety has an interest, and shall inure to the benefit of the Surety for any liability or loss it may have or sustain under any Bond including but not limited to the payment of obligations incurred in the performance of any contract and for labor, materials, and services furnished in the prosecution of the work provided in any contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract covered by any Bond are trust funds, whether in the possession of the Indemnitors or Principals or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract for which the Surety would be liable under any Bond; said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any Bond, under this Agreement, or under any Other Agreements, and this Agreement constitutes notice of such trust.

TWELFTH: **HOMESTEAD** – To the extent permitted by applicable law, the Indemnitors and Principals hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

THIRTEENTH: **SETTLEMENTS** - The Surety shall have the right, at its option and sole discretion, to adjust, settle or compromise any claim, demand, suit or judgment upon any Bond, unless any Indemnitor or Principal, providing a reasonable legal basis therefor, shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

FOURTEENTH: **SURETIES** - In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then all the terms and conditions of this Agreement shall inure also to the benefit of such other sureties, co-sureties and reinsuring sureties, their successors and assigns, as their interests may appear.

FIFTEENTH: **SUITS** - Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

SIXTEENTH: **OTHER INDEMNITY** - The addition to this Agreement of any Indemnitor, including any entities acquired after the date of execution of this Agreement, may be effected by written amendment executed by such Indemnitor only, notwithstanding any language herein to the contrary.  The Indemnitors and Principals shall continue to remain bound under the terms of the Agreement, Other Agreements, and any other agreements containing indemnity obligations, even though the Surety may from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors and Principals, accept, release, or reduce any indemnity obligations or collateral of current or future Indemnitors and Principals for any reason. The Indemnitors and Principals expressly waive notice from the Surety of any such action and, furthermore, it is explicitly understood and agreed by the Indemnitors and Principals that any and all other rights which the Surety may have or acquire against the Indemnitors and Principals and/or others under any such agreements or additional agreements or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.  No Indemnitor shall make any defense to the enforcement of this Agreement based on the execution of Other Agreements or related to the addition or the release of any Indemnitor, and each Indemnitor explicitly confirms its joint and several liability for Bonds issued by the Surety as provided in this Agreement. Principals and Indemnitors also waive and subordinate all rights of indemnity, subrogation and contribution against each other until all obligations to the Surety under the agreement, at law or in equity, have been satisfied in full.

SEVENTEENTH: **INVALIDITY** – Invalidity of any provision of this Agreement by reason of the laws of any jurisdiction shall not render the other provisions hereof invalid.  In case any of the parties set forth in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, including lack of authority to bind any party, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.  Each party agrees to execute promptly any documentation necessary to cure any such failure, defect or invalidity.  It is understood and agreed by the Indemnitors and Principals that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Indemnitors and Principals or others whether by the terms of any other agreement or by operation of law or otherwise.

EIGHTEENTH: **ATTORNEY-IN-FACT** - The Indemnitors and Principals hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the full right and authority, but not the obligation, to exercise all the rights of the Indemnitors and Principals assigned, transferred and set over to the Surety in this Agreement, with full power and authority to execute on behalf of and sign the name of any Indemnitor and/or Principal to any voucher, financing statement, release, satisfaction, check, bill of sale of all or any property by this Agreement assigned to the Surety, or other documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within

assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Indemnitors and Principals hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact and agree to protect and hold harmless the Surety for acts herein granted as attorney-in-fact.

NINETEENTH: **TERMINATION** – Any Indemnitor may terminate its liability under this Agreement upon twenty days' written notice sent by registered and certified mail or courier requiring proof of delivery signature to the Surety, in care of Liberty Mutual Surety, Interchange Corporate Center, 450 Plymouth Road, Suite 400, Plymouth Meeting, PA  19462-1644, but any such notice of termination shall not operate to modify, bar, or discharge Indemnitors or Principals as to any Bonds (a) that may have been executed or authorized prior to the expiration of the notice period; (b) which may be executed after the expiration of the notice period in fulfillment of any commitment given by the Surety prior to the expiration of such notice period; (c) executed in connection with any project as to which any bid bond was executed or authorized prior to the expiration of such notice period; and/or (d) which are renewed, extended, substituted or modified after the expiration of such notice period.  Such termination of liability as to any Indemnitor or Principal in no way affects the obligation of any other Indemnitor or Principal who has not given notice as herein provided.

TWENTIETH: **AMENDMENTS** – This Agreement may not be changed or modified orally.  No change or modification shall be effective unless made by written amendment executed to form a part hereof.

TWENTY-FIRST: **JURISDICTION** - As to any legal action or proceeding related to this Agreement, the Indemnitors and Principals consent to the general jurisdiction of any local, state or Federal court of the United States or its territories having proper subject matter jurisdiction or in any court of the United States or its territories in which any claim may be brought against the Surety under any Bonds, and waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.  Indemnitors and Principals further waive personal service or any and all process.

TWENTY-SECOND: **CURRENCY EXCHANGE** – Should the Surety, when making any payment or incurring any expense directly or indirectly related to Bonds expend funds in currencies other than U.S. Dollars, then Indemnitors shall either reimburse the Surety in U.S. Dollars equal to the amount expended by the Surety at the time the foreign currency was purchased or shall defray the cost of any exchange variation, thereby indemnifying the Surety for any decrease in the valuation of the currency purchased.

TWENTY-THIRD: **CHANGE IN CONTROL** - The Indemnitors agree to provide the Surety with, at least, forty five (45) days prior written notice of a Change in Control (defined below) and to designate the name and address of the Indemnitor with whom the Surety should correspond with respect to this paragraph, which Indemnitor, all Indemnitors agree is designated to act on behalf of them pursuant to this paragraph.  Upon receipt of such notice, the Surety shall advise the Indemnitor designated above, in writing, of its election to (i) approve such Change in Control or (ii) demand that the Indemnitors' procure the discharge of the Surety from any Bonds and all liability by reason thereof.  If the Indemnitors fail to give the Surety timely notice of a Change in Control or if the Surety does not approve the Change in Control and if such discharge is not procured to the sole satisfaction of the Surety then, immediately, upon the Surety's written demand, the Indemnitors shall deposit a sum of money or collateral, of a type and value satisfactory to the Surety, equal to the aggregate penal sum of the then outstanding Bonds, as determined by the Surety in its sole discretion.  The Surety shall send its written demand to the Indemnitor designated above by overnight courier or by registered or certified mail. The Indemnitors hereby acknowledge that if they or any one of them breaches the obligations set forth in this paragraph, the Surety will not have an adequate remedy at law, will suffer irreparable harm and shall be entitled to injunctive relief, enforcing the terms of this paragraph, as well as a final decree, order or judgment granting Surety specific performance of the terms of this Agreement.

"Change in Control' shall mean: (a) the transfer, merger or consolidation (in one transaction or a series of transactions) of all or substantially all of the assets of any non-individual Principal or Indemnitor; (b) the acquisition (in one transaction or a series of transactions) by any person or group, directly or indirectly, of fifty (50%) percent or more of the beneficial ownership or control of any Principal or Indemnitor; or (c) the acquisition by any Principal or Indemnitor, directly or indirectly, of  fifty (50%) percent or more of the beneficial ownership or control in any joint venture, subsidiary, division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of ten (10%) percent or more of the voting power of the total outstanding voting stock of any Principal or Indemnitor.

TWENTY-FOURTH: **DOMESTIC PRINCIPAL DOING FOREIGN CONTRACTS/GOVERNING LAW** - The Indemnitors and Principals hereby agree that as to any legal action or proceeding related to any Bond(s) issued in connection with contracts to be performed outside the United States and its territories, this Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws principles thereof), except to the extent superseded by Federal law.

DATED as of this  **19th**  day of **Jan**, 20 **09**.

*By signing below, each individual executing this Agreement on behalf of a business entity, and each business entity executing this Agreement on behalf of another business entity, represents and warrants that he, she or it is **duly authorized** by Indemnitor to bind Indemnitor to all of the terms and conditions of this Agreement:*

**ATTEST OR WITNESS:**                                    **BY:**

                                                        **CORPORATION - Full Name**
                                                        **Hill Brothers Construction Co., Inc.**
                                                        **T.I.N. 64-0612823**
                                                        **20831 Highway 15 N.,**
                                                        **Falkner, MS 38629**

By: *Jane H. Childs*                          By: *Gerald C. Hill*                         (Seal)
Jane H. Childs                                          Gerald C. Hill
Secretary                                               President

**LIMITED LIABILITY CO - Full Name**
**Purnell Construction Company, LLC**
T.I.N. 72-1050791
724 South 15th Street, PO Box 2702,
Baton Rouge, LA 70821

By: _____
Insert Name of Witness:
Insert Title  DAVID G. Koch

By: _____(Seal)
Eric N.A. Purnell
Manager

**INDIVIDUAL- Full Name**
**Eric N.A. Purnell**
S.S.N. 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
1830 79th Avenue,
Baton Rouge, LA 70807
Telephone

By: _____
Insert Name of Witness
DAVID G. Koch

By: _____
Eric N.A. Purnell

**INDIVIDUAL- Full Name**
**Bernadette A. D. Purnell**
S.S.N. 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
1830 79th Street,
Baton Rouge, LA 70807
Telephone

By: _____
Insert Name of Witness
DAVID G. Koch

By: Bernadette A.D. Purnell
Bernadette A. D. Purnell

**CORPORATE ACKNOWLEDGMENT**

STATE of Mississippi
                                                    ss.
County of Tippah
On this 19th day of January, 20 09, before me personally appeared ____Gerald C. Hill_____
_____ and _____Jane H. Childs_____, known by me to be the __President_____
_____ and _____Secretary_____ of _____Hill Brothers Construction Company, Inc.___
_____,the corporation described in and which executed the foregoing General Agreement of Indemnity;
and who being by me duly sworn, depose and say that that they know the seal of said corporation; that the seal affixed to said Agreement
is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that they signed their names
thereto by like order.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
(Signature of Notary Public)

(NOTARY SEAL)

Notary Public, residing at _Ripley, MS_____
My commission expires _____

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES JUNE 23, 2011
BONDED THRU STEGALL NOTARY SERVICE

**LIMITED LIABILITY COMPANY ACKNOWLEDGMENT**

STATE of __LOUISIANA__

Parish
County of __East Baton Rouge__                    ss.

On this __19th__ day of __January_____ , 20 __09__ , before me personally appeared __Eric N. A. Purnell_____
_____ , known by me to be the person who is identified in and who executed the foregoing General Agreement of
Indemnity, and who being by me duly sworn, deposes and says that (s)he is the Manager of___Purnell Construction Company, LLC__
_____ , a limited liability company; that (s)he is duly authorized to execute said Agreement; and that
(s)he executed said Agreement as the act and deed of said limited liability company.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                                                            __Richard S. Dunn_____
                                                            (Signature of Notary Public)

                              Notary Public, residing at __Baton Rouge, LOUISIANA__

(NOTARY SEAL)                 My commission expires __At my death__

> RICHARD S. DUNN
> Notary Public
> State Of Louisiana
> Bar Roll #05183
> My Commission Is For Life

**INDIVIDUAL ACKNOWLEDGMENT**

STATE of __LOUISIANA__

Parish
County of __East Baton Rouge__                    ss.

On this __19th__ day of __January__ , 20 __09__ , before me personally appeared __Eric N. A. Purnell_____
_____ , known by me to be the person who is identified in and who executed the foregoing General Agreement of
Indemnity, and who being by me duly sworn, deposes and says that (s)he executed said Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written

                                                            __Richard S. Dunn_____
                                                            (Signature of Notary Public)

                              Notary Public, residing at __Baton Rouge, LOUISIANA__

(NOTARY SEAL)                 My commission expires __At my death__

> RICHARD S. DUNN
> Notary Public
> State Of Louisiana
> Bar Roll #05183
> My Commission Is For Life

**INDIVIDUAL ACKNOWLEDGMENT**

STATE of __LOUISIANA__

Parish
County of __EAST BATON ROUGE__                    ss.

On this __19th__ day of __January__ , 20 __08__ , before me personally appeared __Bernadette A.D. Purnell_____
_____ , known by me to be the person who is identified in and who executed the foregoing General
Agreement of Indemnity, and who being by me duly sworn, deposes and says that (s)he executed said Agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                                                            __Richard S. Dunn_____
                                                            (Signature of Notary Public)

                              Notary Public, residing at __Baton Rouge, LOUISIANA__

(NOTARY SEAL)                 My commission expires __At my death__

> RICHARD S DUNN
> Notary Public
> State Of Louisiana
> Bar Roll #05183
> My Commission Is For Life

7300                          6/6

## CORPORATE RESOLUTIONS

As authorized by the corporation by-laws, by duly authorized meeting with quorum present or otherwise, the Board of Directors of **Hill Brothers Construction Company, Inc.** (hereinafter called the "Corporation"), on the _19th_ day of _Jan_, 20 _09_, approved the following Preamble and adopted the following Resolutions:

"WHEREAS, the Corporation has agreed to enter into a certain General Agreement of Indemnity in favor of Liberty Mutual Insurance Company, Employers Insurance Company of Wausau (formerly EMPLOYERS INSURANCE OF WAUSAU A Mutual Company), Peerless Insurance Company and/or any other company that is part of or added to the Liberty Mutual Group, severally not jointly, for which Liberty Mutual Surety underwrites surety business (any one or more individually and collectively hereinafter called the "Surety");

WHEREAS, the Corporation has a financial, material, and beneficial interest in the transaction in which (i) **Hill Brothers Construction Company, Inc.; Purnell Construction Company, LLC; Eric N.A Purnell; Bernadette A.D. Purnell;** ii) any of the Indemnitors or Principals' subsidiaries or affiliates, whether present or future, and whether directly or indirectly held; and iii) any other entity or person in response to a request from any Indemnitor or Principal named herein, and, as to all of the foregoing, whether they act alone or in joint venture with others whether or not said others are named herein (individually and collectively hereinafter called the "Principal(s)")     have applied or will apply to the Surety for any surety bonds, undertakings, recognizances, instruments of guarantee or other surety obligation or whatever nature or kind (hereinafter called "Bond(s)"); and

WHEREAS, the Surety has executed or is willing to consider the execution of the Bonds, as Surety, upon being furnished with the written indemnity of the Corporation.

NOW THEREFORE BE IT:

RESOLVED, that the officers authorized to execute documents on behalf of the Corporation are authorized and empowered, at any time prior or subsequent to the Surety's execution of any Bonds, to execute any indemnity agreement(s) that the Surety requires or may require as consideration for the Surety's execution of Bonds, of whatever kind or nature, on behalf of the Principal

RESOLVED FURTHER, that said officers are authorized and empowered, at any time prior to or subsequent to the Surety's execution of any Bonds, to execute any and all amendments to any and all indemnity agreement(s); and to execute any other or further agreements relating to any such Bonds or to any collateral that may have been deposited with the Surety in connection therewith; and to take any and all other actions that may be requested or required by the Surety, in connection with any such Bonds;

RESOLVED FURTHER, that said officers are authorized and empowered to affix the corporate seal to any and all indemnity agreement(s), to any and all amendments to said indemnity agreement(s), and to any other or further agreement(s); and

RESOLVED FURTHER, that any and all actions heretofore taken by any representative of the Corporation in order to carry into effect the purposes of the foregoing resolutions, including the execution and delivery of any indemnity agreement(s) are hereby approved, ratified and confirmed."

I, **Jane H. Childs**, Secretary of the Corporation, have compared the foregoing Preamble and Resolutions with the original thereof as recorded in the Minute Book of the Corporation; and do certify that the same are correct and true transcripts therefrom, and constitutes the whole of said Preamble and Resolutions.

The officers authorized to execute documents on behalf of this Corporation include:

_Gerald C. Hill, President_

Given under my hand and the seal of the Corporation, in the City of _Falkner_ State of _MS_, this _19th_ day of _Jan_, 20 _09_.

_James H. Childs_____ (Seal)

Jane H. Childs, Secretary

## LIMITED LIABILITY COMPANY RESOLUTIONS

At a meeting of the Members of **Purnell Construction Company, LLC** (hereinafter called the "Company"), duly called and held on the _14th_ day of _Jan_, 200_9_, or as otherwise duly authorized, the following Preamble was approved and Resolutions were adopted:

"WHEREAS, the Company has agreed to enter into a certain General Agreement of Indemnity in favor of Liberty Mutual Insurance Company, Employers Insurance Company of Wausau (formerly EMPLOYERS INSURANCE OF WAUSAU A Mutual Company), Peerless Insurance Company and/or any other company that is part of or added to the Liberty Mutual Group, severally not jointly, for which Liberty Mutual Surety underwrites surety business (individually and collectively called the "Surety");

WHEREAS, the Company has a financial, material and beneficial interest in transactions in which (i) **Purnell Construction Company, LLC; Hill Brothers Construction Company, Inc.; Eric N.A. Purnell; Bernadette A.D. Purnell**; ii) any of the Indemnitors or Principals' subsidiaries or affiliates, whether present or future, and whether directly or indirectly held; and iii) any other entity or person in response to a request from any Indemnitor or Principal named herein, and, as to all of the foregoing, whether they act alone or in joint venture with others whether or not said others are named herein (individually and collectively hereinafter called "Principal(s)"), have applied or will apply to the Surety for surety bonds, undertakings, recognizances, instruments of guarantee or other surety obligation or whatever nature or kind (hereinafter called the "Bond(s)"); and

WHEREAS, the Surety has executed or is willing to consider the execution of the Bonds, as surety, upon being furnished with the written indemnity of the Company.

NOW THEREFORE BE IT:

RESOLVED, that the Managers authorized to execute documents on behalf of the Company are hereby authorized and empowered, at any time prior or subsequent to the Surety's execution of any Bonds, to execute any indemnity agreement(s) that the Surety requires or may require as consideration for the Surety's execution of Bonds, of whatever kind or nature, on behalf of the Principals;

RESOLVED FURTHER, that the said Managers are authorized and empowered, at any time prior to or subsequent to the Surety's execution of any Bonds, to execute any and all amendments to any and all indemnity agreements; and to execute any other or further agreements relating to any such Bonds or undertakings or to any collateral that may have been deposited with the Surety in connection therewith; and to take any and all other actions that may be requested or required by the Surety, in connections with any such Bonds or undertakings; and

RESOLVED FURTHER, that any and all actions heretofore taken by any representative of the Company in order to carry into effect the purposes of the foregoing resolutions, including the execution and delivery of any indemnity agreement(s) are hereby approved, ratified and confirmed."

We, the undersigned, constituting all of the Members of the Company, agree to and execute these Resolutions effective as of the date listed below.

The titles and/or names of those Managers and/or Members authorized to execute documents on behalf of this Company are:

Insert names and titles of persons and/or correct legal names of business entities who are authorized to execute documents on behalf of LLC/refer to operating agreement
Eric N.A. Purnell, Manager

Dated this _19th_ day of _Jan_, 200_9_ .

| MEMBER: | | MEMBERSHIP INTEREST |
|---|---|---|
| By: _____ | | _____ |
| Eric N.A. Purnell, Manager | | |
| By: _____ | | _____ |
| Member | | |
| By: _____ | | _____ |
| Member | | |
| By: _____ | | _____ |
| Member | | |
| By: _____ | | _____ |
| Member | | |

# EXHIBIT 2

# ARKANSAS STATE HIGHWAY COMMISSION
# STATUTORY PERFORMANCE BOND

SURETY'S BOND NO. 83B00594l

KNOW ALL MEN BY THESE PRESENTS:

That we, **HILL BROS. CONSTRUCTION CO., INC.** as Principal, and

Liberty Mutual Insurance Company

of 175 Berkeley Street Boston, Mass. 02117 ,

authorized to do business in the State of Arkansas, as Surety, are held and firmly bound unto the State of Arkansas for the use and benefit of the Arkansas State Highway Commission, and its successors and assigns for one hundred percent of the contract amount in the sum of:

**thirty-four million eight hundred seventy-three thousand two hundred fifty and 18/100 dollars**

($34,873,250.18), lawful money of the United States of America to be paid to said Arkansas State Highway Commission, to which payment, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors or assigns, jointly and severally, firmly by these presents.

Signed, sealed and delivered this date _____.

**THE CONDITION OF THIS BOND** is as follows:  That, whereas, said **HILL BROS. CONSTRUCTION CO., INC.**, as Principal, has entered into a contract with the State Highway Commission of the State of Arkansas for the construction of that certain project in **MONROE** County, designated as

**Job 110503**          **FEDERAL AID PROJECT BRN-0048(21)**

**Job Name:  ROC ROE & WHITE RIVER RELIEF STRS. & APPRS. (CLARENDON) (F)**

consisting of an improvement of **State Highway 79, Section 13,** more specifically described in the Contract Schedule of Prices attached hereto, such work to be performed in strict accordance with the terms and conditions of said contract.

**NOW, THEREFORE,** if the above bound **HILL BROS. CONSTRUCTION CO., INC.** shall in all things stand and abide by and well and truly observe, do keep and perform all and singular, the terms, covenants, guarantees and agreements in said Contract to be observed, kept, done and performed, and each of them, at the time and in the manner and form therein specified, and shall do and perform all the labor and work as specified in said Contract and in strict accordance with the terms of said Contract and the Plans and Specifications thereto attached, and made a part thereof, along with any and all modifications thereof, and shall be bound to the Arkansas State Highway Commission for all over-payments made to the Contractor, and shall indemnify and save harmless said Arkansas State Highway Commission against any loss or damage of whatever kind and character, arising or occasioned by deeds of negligence of said principal, his agents, servants, and employees, in the prosecution of the work, or by reason of improper safeguards or incomplete protection to the work, and shall complete said work within the time specified in said Contract, then this obligation shall be null and void; otherwise to remain in full force and effect.

## STATUTORY PERFORMANCE BOND (Continued)

The Surety hereon further agrees that lack of knowledge by the Surety of any delay in the progress of the work by the Contractor shall not operate as a defense by the Surety to any claim or suit on this bond, it being understood that the Surety shall receive reasonable notice of all steps looking to the cancellation of the Contract, and, or, the reletting of the work.

When a contract is placed in default or terminated in accordance with Section 108.08 of the Standard Specifications, a Suspension Order will be issued effective on the date that the Chief Engineer gives notice of default or termination. A Resumption Order will be issued sixty (60) days after the date of the Suspension Order or when work is actually resumed if prior to sixty (60) days. If the Chief Engineer determines that special circumstances or project complexity justify, this sixty-day period may be modified. If the responsible Surety fails to actively respond to the Resumption Order within thirty (30) days and to secure immediate completion/closing of the project, then no future bonds will be accepted from the Surety until the matter is resolved to the Department's satisfaction.

WITNESS OUR HANDS, this date _____

HILL BROS. CONSTRUCTION CO., INC.

_____        _____
            Surety                                   Principal

Liberty Mutual Insurance Company
            Surety

BY: _____   BY: _Sterling D. Aken_
    Licensed Agent, State of Arkansas         Sterling D. Akers, Vice President
    David A. McDonnell Attorney-in-fact
    AR Non-Resident Agent

Filed with the Arkansas State Highway Commission for approval this date_____.

_____

(Surety Seal)

-5-

# ARKANSAS STATE HIGHWAY COMMISSION
## STATUTORY PAYMENT BOND

SURETY'S BOND NO. 83B 60594 l

KNOW ALL MEN BY THESE PRESENTS:

That we, **HILL BROS. CONSTRUCTION CO., INC.** as Principal, and

Liberty Mutual Insurance Company

of 175 Berkeley Street Boston, Mass 02117 ,

authorized to do business in the State of Arkansas, as Surety, are held and firmly bound unto the State of Arkansas for the use and benefit of the Arkansas State Highway Commission, and its successors and assigns for eighty percent of the contract amount in the sum of:

**twenty-seven million eight hundred ninety-eight thousand six hundred and 14/100 dollars**

**($27,898,600.14)**, lawful money of the United States of America to be paid to said Arkansas State Highway Commission, to which payment, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors or assigns, jointly and severally, firmly by these presents.

Signed, sealed and delivered this date _____.

THE CONDITION OF THIS BOND is as follows: That, whereas, said **HILL BROS. CONSTRUCTION CO., INC.**, as Principal, has entered into a contract with the State Highway Commission of the State of Arkansas for the construction of that certain project in **MONROE** County, designated as

**Job 110503**         **FEDERAL AID PROJECT BRN-0048(21)**

**Job Name: ROC ROE & WHITE RIVER RELIEF STRS. & APPRS. (CLARENDON) (F)**

consisting of an improvement of **State Highway 79, Section 13,** more specifically described in the Contract Schedule of Prices attached hereto, such work to be performed in strict accordance with the terms and conditions of said contract.

NOW, THEREFORE, if the above bound **HILL BROS. CONSTRUCTION CO., INC.** shall pay all bills and claims for all materials, labor and supplies entered into contingent or incident to the construction of said work, or used in the course of performance of the work, then this obligation shall be null and void; otherwise to remain in full force and effect.

The Surety hereon further agrees that lack of knowledge by the Surety of any delay in the progress of the work by the Contractor shall not operate as a defense by the Surety to any claim or suit on this bond, it being understood that the Surety shall receive notice of all steps looking to the cancellation of the Contract, and, or, the reletting of the work.

The Surety Company hereon agrees to pay all unpaid claims for all materials, labor and supplies entered into contingent or incident to the construction of said work or used in the course of said work including but not limited to materials, labor and supplies described in and provided for in Act Nos. 65 and 368 of 1929, Act No. 82 of 1935, and Acts amendatory thereof. Unpaid claims for materials, labor and supplies entered into contingent or incident to construction of said work or used in the performance of said work shall have a right of action on this bond in accordance with the provisions of Ark. Code Ann. §22-9-403 and Ark. Code Ann. §18-44-503. However, no suit, action or proceeding shall be brought on this bond outside the State of Arkansas.

## STATUTORY PAYMENT BOND (Continued)

WITNESS OUR HANDS, this date _____

HILL BROS. CONSTRUCTION CO., INC.

_____          _____
              Surety                                    Principal

Liberty Mutual Insurance Company
              Surety

BY: _____      BY: *Sterling D. Akers*
    Licensed Agent, State of Arkansas           Sterling D. Akers   Vice President
    David A. McDonnell  Attorney-in-fact
    AR Non-Resident Agent

Filed with the Arkansas State Highway Commission for approval this date_____.

_____

(Surety Seal)

# EXHIBIT 3

## PURCHASE ORDER

### HILL BROTHERS CONSTRUCTION COMPANY, INC.

**TO:**  Arkansas Concrete Company
PO Box 409

Forrest City, AR  72336

870-633-4010            870-633-4013

**ORDER NO:** 78400001
**DATE:**  5/5/2009
**JOB NAME:** AHTD Monroe County
**JOB:**  7840

**SHIP TO:** Hill Brothers Construction Company

**BILL TO:** Hill Brothers Construction Company
20831 Hwy 15 North , P.O. Box 131

Falkner, MS 38629

**FREIGHT:**

**DELIVERY REQUIRED:**

SHIP THE FOLLOWING ITEMS AND DO ALL WORK IN STRICT ACCORDANCE WITH THE PLANS AND SPECIFICATIONS FOR THE JOB INDICATED

| ITEM | COST CODE | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|------|-----------|-------------|----------|------|-----------|--------|
| 00001 | 028-POR | Class S & S(AE) | 194.00 | CY | $99.50 | $19,303.00 |
| 00001 | 029-POR | Class S & S(AE) | 115.00 | CY | $99.50 | $11,442.50 |
| 00001 | 030-POR | Class S & S(AE) | 12.00 | CY | $99.50 | $1,194.00 |
| 00001 | 079-POR | Class S & S(AE) | 30.00 | CY | $99.50 | $2,985.00 |
| 00001 | 091-POR | Class S & S(AE) | 4,080.00 | CY | $99.50 | $405,960.00 |
| 00001 | 092-POR | Class S & S(AE) | 5,489.00 | CY | $99.50 | $546,155.50 |
| 00002 | 012-000 | Flowable Fill | 89.00 | Cy | $85.00 | $7,565.00 |

*\* ANY CEMENT INCREASE AFTER 12/31/09 WILL BE PASSED
ALONG AT OUR COST PER QUOTE.*

*\* MUST RECEIVE PAYMENT FOR PREVIOUS MONTHS BUSINESS*

| | |
|--|--|
| SUBTOTAL | $994,605.00 |
| TAXES | $0.00 |
| TOTAL | $994,605.00 |

*BY 15TH OF FOLLOWING MONTH.   Net 30 days from Invoice. SDA*

Note:
Retainer will be billed at $3.50 per cubic yard.
Prices are F.O.B. jobsite.
Material to be furnished when ordered by jobsite superintendent.
Applicable Sales Tax will apply.
All material must be in strict accordance with the plans and specifications.

THIS PURCHASE ORDER, SET FORTH ABOVE, IS LIMITED SOLELY TO THE TERMS AND CONDITIONS ON THE ATTACHED PAGE. NO ADDITIONAL OR DIFFERENT TERMS SHALL BECOME A PART OF THIS PURCHASE ORDER WITHOUT THE PRIOR WRITTEN CONSENT OF AN AUTHORIZED REPRESENTATIVE OF HILL BROTHERS.  SELLER'S ACCEPTANCE, WHETHER BY CONDUCT OR WRITTEN ACKNOWLEDGEMENT, IS LIMITED SOLELY TO THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER.

Accepted: *Arkansas Concrete Co.*
By: *Brad Dwayer*
Date: *6/2/09*

HILL BROTHERS CONSTRUCTION COMPANY, INC.

By: *7-9-09   Sterling D. Allen*

*GLEN DUNLAP
662-316-2922*

HILL BROTHERS CONSTRUCTION COMPANY, INC.

PURCHASE ORDER

# TERMS & CONDITIONS

1.   INCORPORATION OF PRIME CONTRACT. All material, equipment and other items, including labor and services, if any, referenced in this Purchase Order (hereafter collectively referred to as "Goods") shall conform strictly with the terms, conditions, plans and specifications of the Prime Contract for the Project indicated on the face page hereof. When a contract is incorporated herein by reference and made an integral part of this Purchase Order ("PO"). In the event of an ambiguity or conflict between payment or other provisions between the Prime Contract and the PO, this PO shall govern and control, except that under no circumstances shall Seller have any greater rights, remedies, or entitlements against HILL BROTHERS CONSTRUCTION COMPANY, INC. ("HILL BROTHERS") with respect to this PO or the Goods hereunder than HILL BROTHERS has against Owner under the Prime Contract for same.

2.   APPROVAL OF GOODS. At Seller's expense, Seller shall promptly submit to HILL BROTHERS all required shop drawings, product data, samples and other information ("Submittals") related to the Goods or as may be otherwise requested by HILL BROTHERS. Submittals shall be subject to the approval of the Owner, architect, engineer and HILL BROTHERS prior to any fabrication or writing by HILL BROTHERS before any fabrication commences. Seller shall not permit execution of HILL BROTHERS, Owner, architect, and engineer to all intended deviations from any requirements of the Prime Contract and of this PO, including proposed "equal" substitutions. Approval of Submittals shall not constitute approval of deviations, unless there is express and specific approval of the deviation itself given in writing by HILL BROTHERS and the Owner before performance of the division. Any changes or substitution of materials are any other proposal of Seller, which may be approved, shall be Seller's sole risk and full responsibility. Seller shall pay HILL BROTHERS for all additional costs, including all delays and disruptions in performance, incurred by HILL BROTHERS or others as a result of defective or nonconforming goods, including changes or substitutions not specifically authorized in advance.

3.   RISK OF LOSS AND TITLE. Seller shall bear the risk of loss and risk of damage to Goods until delivered to HILL BROTHERS in accordance with the terms on the face page of this PO, properly determined to be conforming. To secure Seller's faithful performance of this PO, Seller grants to HILL BROTHERS a security interest in all Goods which are identified in or referenced by this PO. Title to the Goods passes to HILL BROTHERS upon Seller's delivery of conforming Goods to HILL BROTHERS in accordance with the terms on the face page of this PO. Neither the transfer of risk of loss nor passing of title shall diminish or adversely affect warranty, indemnity, and other obligations of Seller under this PO.

4.   WARRANTIES. In addition to any other warranties, including descriptions, expressly set forth in this PO and in the Prime Contract incorporated by reference, Seller warrants that the Goods supplied hereunder shall be: new; free from defects in design, workmanship and materials; fit for the purposes intended, and strictly in compliance with all plans and specifications. Seller's warranties shall extend either for the warranty period specified in the Prime Contract or, if no period is specified, for one (1) year after final payment by HILL BROTHERS to Seller. Any replacement of materials or corrections to workmanship shall be additionally warranted as above for a period of one (1) year after the date of remedying said defect or for such longer period of time as may be provided by the Prime Contract. Seller acknowledges that, notwithstanding any drawings, specifications, samples or other descriptions of Goods set forth in this PO, HILL BROTHERS is relying on Seller's skill and judgment to furnish Goods suitable for the purposes of the Project described herein. All warranties survive any inspection, delivery, acceptance or payment. Seller's warranties in this PO are in addition to any other warranties provided by law or by separate agreements. HILL BROTHERS may demand and Seller shall provide adequate assurance, by bond or other means acceptable to HILL BROTHERS, that Seller will comply with this PO, including all warranties.

5.   TIME OF PERFORMANCE. Time is of the essence for this PO. Seller accepts HILL BROTHERS' right to schedule performance and deliveries by Seller of the Goods and to adjust such schedules as HILL BROTHERS in good faith deems best for the Project as a whole. Deliveries are to be made strictly in accordance with HILL BROTHERS' schedule and directions, as may be adjusted by HILL BROTHERS, as to time, quantities, and location. Seller shall arrange and pay for suitable storage of all Goods delivered, regardless of the location specified for delivery. HILL BROTHERS reserves the right to cancel, reject or refuse any delivery made prior to or subsequent to the times specified. If delivery schedules cannot be maintained, Seller must notify HILL BROTHERS in writing immediately. Seller shall be liable for all costs and damages, of whatever nature, resulting from the Seller's failure to deliver, according to HILL BROTHERS' schedule. Goods in strict accordance with the plans and specifications and approved by the Owner; such costs and damages can be backcharged to or offset against any outstanding balance otherwise owed Seller under this or any other PO. Further, such costs and damages include but are not limited to any liquidated or actual damages assessed by the Owner against HILL BROTHERS and any other costs, losses, and damages incurred by HILL BROTHERS because of delays or difficulties attributable to the Seller's late and/or deficient performance. Seller's failure to provide submittals as and when required or Seller's failure to provide Goods as warranted in this PO or Seller's failure to maintain delivery as scheduled are, jointly and severally, material breaches of this PO and shall entitle HILL BROTHERS to terminate this PO for default.

6.   INSPECTION, ACCEPTANCE AND CANCELLATION. HILL BROTHERS and its authorized representatives shall have the right, but not the obligation, to inspect the Goods at all reasonable times and places during manufacture and before and after delivery. Acceptance of any part of the Goods required by this PO shall not bind HILL BROTHERS to accept future shipments, nor deprive HILL BROTHERS of the right to return Goods already accepted or to exercise any other remedy which HILL BROTHERS may have. Payment for Goods prior to inspection shall not constitute acceptance nor a waiver of any prejudice to any claim HILL BROTHERS may have against Seller. Rejected Goods shall be held for Seller's instructions at Seller's risk, and all returns shall be at Seller's expense. If costs are by reason, Seller shall, before said Goods are removed from the Project site, give to HILL BROTHERS written notice specifying all alleged damages, missing parts or items, and all other claimed reduction in value of said Goods, and Seller shall afford HILL BROTHERS an opportunity to inspect said Goods; failure to give HILL BROTHERS written notice, Seller's failure to give HILL BROTHERS the foregoing required written notice and opportunity to inspect shall constitute Seller's waiver of claims and release of HILL BROTHERS.

7.   PRICE. The Price for all Goods shall be as stated on the face page of this PO. Price includes all federal, state, and local taxes and all freight, delivery and other charges of whatever kind or nature. If Price is not stated in this PO for any item, Goods shall be billed at the price so quoted or the prevailing market price, whichever is lower. If Seller's invoices are subject to a cash discount, the discount period shall commence on the later of delivery of conforming Goods or the date of HILL BROTHERS' receipt of the invoice. During the term of this PO, Seller shall give HILL BROTHERS the benefit of all trade discounts, rebates, or price reductions offered to any other party with respect to the same or substantially similar items as the Goods covered by this PO.

8.   CHANGES. HILL BROTHERS may, by written order, make changes in the general scope of this PO and Seller shall be obligated to perform such changes, with the purchase price being adjusted accordingly. No price increases or additional charges of any kind will be valid unless Seller obtains a written change order from HILL BROTHERS before Seller alters any extra work. Seller shall give written notice to HILL BROTHERS any changes or extra costs, of whatever nature, at least five (5) working days prior to the time the Prime Contract would require HILL BROTHERS to give notice of same to the Owner; otherwise, Seller's claims shall be waived. For any changes in this PO, Seller shall be limited to an increase in the price and/or an extension in time to the extent of price extensions and time extensions that HILL BROTHERS, on behalf of Seller, actually receives from the Owner.

9.   PAYMENT. Before submitting any invoice or otherwise requesting payment from HILL BROTHERS, Seller shall have paid through the date of invoice or request for payment all labor, services, material, supplies, equipment and other charges relating to the Goods and obligations covered by this PO. Subject to the terms and conditions of this PO, HILL BROTHERS agrees to pay Seller's approved invoices, less retainage, for conforming Goods timely delivered and either suitably stored at the Project or incorporated into the work within thirty (30) days after HILL BROTHERS' receipt of such (i) a correct invoice from Seller containing all information required by HILL BROTHERS and (ii) payment from Owner for such Goods. Notwithstanding anything in this PO, the Prime Contract, any bond or any other document to the contrary, HILL BROTHERS' actual receipt of payment from Owner for Seller's Goods shall be an absolute condition precedent to any right of Seller to receive payment from HILL BROTHERS for such Goods. Seller's acceptance of payment constitutes a general release of HILL BROTHERS and HILL BROTHERS' surety from all claims and liability of whatever nature, known or unknown, which arise out of or relate to costs occurring through the date of payment. Seller's acceptance of final payment shall constitute a full release of HILL BROTHERS from all claims and liabilities arising under or related in any way to this PO. No payment, including final payment, shall be construed as acceptance of defective, incomplete or nonconforming Goods, and Seller shall remain responsible for full performance in strict compliance with this PO. Seller and Seller's material men shall furnish affidavits, lien waivers, releases of claim, and such other documents as may be required by HILL BROTHERS as evidence of compliance with this PO. Seller shall furnish a final lien waiver and final release of claim, which may be made subject to receipt of final payment.

10.   TERMINATION BY HILL BROTHERS. Seller fails to comply strictly with all terms and conditions of this PO shall entitle HILL BROTHERS to terminate this PO for default, to take possession and assume ownership of all Goods made by Seller; to procure Goods, in whole or in part, elsewhere; and to charge Seller with all costs, expenses, and damages of whatever nature including, without limitation, attorneys' fees and nonincidental damages arising from or attributable to said default. In the event of termination for default, Seller shall not be entitled to any further payments until all requirements of this PO have been fully satisfied and until final payment has been received by HILL BROTHERS from the Owner, and then only to the extent the unpaid PO balance exceeds all costs, expenses, and damages incurred by HILL BROTHERS in completing the PO requirements and sustained by HILL BROTHERS as a result of Seller's default.

In addition to termination by default, HILL BROTHERS reserves the right, at any time and for its convenience and without Seller's consent, to terminate this PO in whole or in part by written notice to Seller. Seller, however, acknowledges that it has no right or privilege to terminate this PO without HILL BROTHERS' written consent. Immediately upon receipt of notice of termination, Seller shall stop all performance hereunder, except as otherwise directed by HILL BROTHERS. If Seller is not in default of any of its obligations hereunder at the time of such termination, HILL BROTHERS shall pay to Seller, as Seller's sole and exclusive remedy, less any applicable offsets, an amount equal to (a) reasonable and documented costs (the "Costs") incurred by Seller prior to the notice of termination, plus (b) a fee ("Fee") not to exceed ten percent (10.0%) of the Costs, for Seller's provable overhead and profit, said sum shall be deemed full and complete compensation for all other amounts to which Seller may be entitled, including without limitation indirect expenses, overhead, administration, supervision and profit; provided, however, that in no event shall the payments specified herein, plus prior payments, exceed the purchase price of the Goods; likewise, in the event of a termination by the Owner, HILL BROTHERS' liability hereunder shall not in any event exceed the amount it actually receives by HILL BROTHERS on behalf of the Seller.

If HILL Brothers terminates the PO for default but it is determined that Seller was not in default as of the termination, the termination shall be regarded as for HILL BROTHERS' convenience and Seller's sole and exclusive remedy shall be amounts payable under the convenience termination provisions above. In no event shall Seller be entitled to special, consequential, or exemplary damages, nor shall Seller recover any lost or anticipatory profits alleged to have resulted from termination of this PO. Regardless of whether the termination is for Seller's default or for HILL BROTHERS' convenience, all Goods completed or partially completed prior to termination shall become the property of HILL BROTHERS, or at HILL BROTHERS' option, the salvage value of the Goods may be deducted from any amount due Seller by reason of termination. HILL BROTHERS reserves all rights and remedies provided by law, in addition to those set forth herein.

11.   ASSIGNMENTS. Without the prior written consent of HILL BROTHERS, Seller shall not make any contract with any other entity for furnishing any of the Goods covered by this PO, or assign this PO or any right hereunder. Seller shall not assign any amounts due or to become due under this PO without written notice to HILL BROTHERS at least thirty (30) days before such amounts are due to be paid to Seller. HILL BROTHERS' acceptance or acknowledgement of any assignment shall not constitute any representation or admission by HILL BROTHERS that the sum assigned or any amount whatsoever is owed to Seller. Seller shall remain fully liable to HILL BROTHERS for performance of this PO even if HILL BROTHERS assigns rights or delegates duties.

12.   DISPUTES. This PO is made in, and shall be governed by the laws of, Mississippi. Any claims or disputes arising out of or related to this PO and not subject to mandatory arbitration in accordance with the current and applicable rules and procedures of the American Arbitration Association, except that if HILL BROTHERS in good faith believes that any claim, dispute, or matter be controversy with Seller also involves rights or liabilities of the Owner, Architect, or other third party, then, at HILL BROTHERS' sole election, Seller agrees to resolve such issues in the same forum or proceeding, including arbitration, court, or administrative authority, which has jurisdiction over some or all claims, disputes, and matters in controversy involving the Owner, Architect, or other third party so as to prevent conflicting and avoid inconsistent results.

HILL BROTHERS and Seller intend and agree that the foregoing dispute resolution provisions and rights of election given HILL BROTHERS are not independent of or severable from the remainder of this PO and that such provisions and election rights are supported by the consideration and mutuality of the PO as a whole. The forum for any arbitration or litigation, if so elected by HILL BROTHERS, shall be at the location of the Project, unless HILL BROTHERS agrees to designate another locale to facilitate joinder of parties, to consolidate claims, or for any other reason.

**HILL BROTHERS CONSTRUCTION COMPANY, INC.**

PURCHASE ORDER

# TERMS & CONDITIONS

Should HILL BROTHERS through litigation, arbitration, or other means seek to recover on any surety bond given by Seller under this PO, Seller and its surety, jointly and severally, agree to pay HILL BROTHERS all costs, expenses, and attorneys' fees incurred in the investigation, preparation, and trial or hearing of such matters and otherwise reasonably related thereto.

If HILL BROTHERS and Seller litigate or arbitrate a monetary claim, not otherwise prohibited by this PO, the party found liable in such proceeding will pay the other party's reasonable and necessary attorneys' fees. If less than the full amount of such monetary claim is awarded, the party asserting such claim ("claimant") shall recover reasonable and necessary attorneys' fees (but no contingent fees) equal to the proportion of the amount awarded to the amount claimed, and the claimant shall pay the other party's reasonable and necessary attorneys' fees (but no contingent fees) equal to the proportion of the amount denied to the amount claimed. Notwithstanding the existence of any dispute, claim, or matter in controversy, Seller is obligated to and shall proceed diligently with complete and timely performance of this PO.

13. COMPLIANCE WITH LAWS. Seller shall comply with all laws, ordinances, codes, safety requirements, and regulations of whatever nature that apply to this PO that are otherwise effective for the duration. Unless otherwise exempt, Seller's obligation includes but is not limited to compliance with the provisions of paragraph (1) through (7) of Part 202 of Executive Order 11246, as amended; the affirmative action for handicapped workers clause set forth in 41 CFR 60-741.4, and the affirmative action for disabled veterans and veterans of the Vietnam era clause set forth in 41 CFR 60-250.4, which are incorporated by reference herein. The Seller has exclusive liability for obtaining all licenses, certifications, or other approvals as may relate to the Seller's qualification to do business and specifically to performance of the Subcontract work. Seller hereby represents and warrants that the Goods hereunder are not produced, manufactured, sold, packaged, marketed, transported, or priced in violation of any federal, state or local law and do not violate or infringe upon any patent, trademark or other rights of third parties. Seller shall have full and exclusive liability for the payment of all license, gross receipts, sales, use, or any other taxes applicable to materials, equipment, labor, or services relating to the Goods and obligations covered by this PO. In the event HILL BROTHERS pays any such tax or payment on behalf of Seller, Seller agrees to fully reimburse HILL BROTHERS upon demand for the amount thereof (including penalties and interest).

Further, Seller hereby represents, warrants, and covenants to Contractor that Seller (i) has complied, and shall at all times during the term of this Contract comply in all respects with all immigration laws, statutes, rules, codes, orders and regulations, including, without limitation, the Immigration Reform and Control Act of 1986, as amended, the Immigration and Nationality Act, as amended, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended, and, for Mississippi projects, the Mississippi Employment Protection Act of 2008 (requiring Employer's adherence to the federal government's E-Verify Program, as amended, and any successor statutes, laws, regulations and rules thereto (collectively, the "Immigration Laws"); (ii) has properly maintained, and shall at all times during the term of this Contract properly maintain, all employment records required by the Department of Homeland Security (the "DHS"), including, without limitation, the completion and maintenance of the Form I-9 for each of Seller's employees, and (iii) has responded, and shall at all times during the term of this Contract respond in a timely fashion to any inspection requests related to such I-9 Forms by DHS or to social security number "mismatches" reflected in communications from the Social Security Administration (the "SSA"). During the term of this Contract, Seller shall, and shall cause its directors, officers, managers, agents and employees, to fully cooperate in all respects with any audit, inquiry, inspection, or investigation that may be conducted by the DHS of Seller or any of its employees.

Seller shall maintain photocopies of all supporting employment eligibility and identity documentation (the "Documents") for all employees who are hired by Seller and shall require any Sub-Seller, if any, to attest to and comply with this requirement in written form. If Contractor becomes aware of evidence which, in Contractor's sole discretion, appears to be reasonably credible, that an undocumented worker has performed work on or been associated with work performed by the Seller or any Sub-Seller related to this Contract, Seller shall, at its own expense, immediately perform an audit of the Documents relating to its employees. Upon written request by Contractor, the documents shall be provided to Contractor for review within two (2) business days of such written request. If Seller breaches any provision of this Article 13, Contractor may terminate this Contract immediately, in its sole discretion.

14. INDEMNITY. To the fullest extent allowed by law, Seller shall defend, indemnify, reimburse, save harmless and exonerate HILL BROTHERS and the Owner from and against all claims, liabilities, losses, expenses and damages, of whatever nature, including without limitation, attorneys' fees and consequential damage, which are alleged to arise from or be caused by, in whole or in part, any act or omission of Seller with respect to this PO or to the subject Project. Seller's obligations under this paragraph shall apply to any personal injury, sickness, death, property damage, economic loss and additional expense of any kind for which Seller's conduct or Goods are alleged as a cause or contributing factor. Seller's indemnity and defense obligations shall survive acceptance and payment of the Goods. Should any delay by Seller, nonconformance of Goods, or nonperformance by Seller cause or contribute to any delay in the Project or to any increased costs, losses, or consequential damages to HILL BROTHERS or to the Owner, Seller shall pay, indemnify and exonerate HILL BROTHERS for any liquidated or actual damages assessed by the Owner against HILL BROTHERS and also for HILL BROTHERS' costs, expenses, and losses, including attorneys' fees and consequential damages.

15. ENTIRE AGREEMENT/NO WAIVER. This PO represents the complete and integrated agreement between HILL BROTHERS and Seller, and it supersedes all prior negotiations, whether written or oral. Except as set forth in paragraph 13, the terms and conditions of this PO are severable and the validity or nonenforceability of any term or condition of this PO shall not invalidate, render unenforceable or adversely affect the remaining terms and conditions. This PO requires an entire and indivisible performance by Seller, and withstanding payments to Seller in installments, this PO cannot be amended, modified or terminated except in writing signed by an authorized representative of HILL BROTHERS. This PO is binding upon and enforceable by the successors in interest of HILL BROTHERS and Seller. The failure or delay by HILL BROTHERS to exercise rights or regard to any noncompliance by Seller shall not constitute a waiver of such rights as to any continuing or subsequent noncompliance.

16. COURSE OF DEALING. HILL BROTHERS and Seller agree that the Standard Terms and Conditions, Sections 2 through 16, establish a course of dealing between them and shall apply to this and all other projects, unless either HILL BROTHERS or Seller gives written notice of objection to any term or condition before commencement of performance in connection with any other project. Otherwise, Seller's manufacture, identification, commencement of preparation of Submittals, shipment of Goods, or any other act consistent with acceptance, shall constitute the agreement of HILL BROTHERS and Seller that these Standard Terms and Conditions apply to such project and constitute a waiver by both parties of all objections to any of the Standard Terms and Conditions even if a PO has not been fully executed at the time such performance commences. HILL BROTHERS and Seller are entitled to specific performance of this provision with respect to future projects.

17. SAFETY. Seller shall comply fully with all rules and regulations of OSHA and any other authority having jurisdiction over Seller's operations, and Seller shall adhere also to all additional and/or more stringent requirements of the most current Contractor's Safety Policy which is incorporated herein by reference and copies of which are available to Seller upon request.

**HILL BROTHERS CONSTRUCTION & ENGINEERING CO., INC.**

**PURCHASE ORDER**

# NONDISCRIMINATION

## (Applicable to Federal-aid construction contracts and related subcontracts and purchase orders exceeding $10,000.)

1. INCORPORATION OF PRIME CONTRACT. [illegible]

2. APPROVAL OF GOODS. [illegible]

3. RISK OF LOSS AND TITLE. [illegible]

4. WARRANTIES. [illegible]

5. TIME OF PERFORMANCE. [illegible]

6. INSPECTION, ACCEPTANCE AND CANCELLATION. [illegible]

7. PRICE. [illegible]

8. CHANGES. [illegible]

9. PAYMENT. [illegible]

10. TERMINATION BY HILL BROTHERS. [illegible]

[illegible]

11. ASSIGNMENTS. [illegible]

12. DISPUTES. [illegible]

[illegible]

13. COMPLIANCE WITH LAWS. [illegible]

14. INDEMNITY. [illegible]

15. ENTIRE AGREEMENT AND WAIVER. [illegible]

16. COURSE OF DEALING. [illegible]

17. SAFETY. [illegible]

[illegible]

April 6, 2009

78400001

Attn: Randel
Hill Bros. Construction, Inc.
P. O. Box 131
Falkner, Ms 38629-0131

*Baker Ready*
*Jeff Kirkdoffer —*

Re: Ahtd Job #110503-Clarendon, Ar

Dear Randel:

Please accept this letter as our firm commitment to provide ready-mixed concrete for the project mentioned above as follows:

| | |
|---|---|
| Class S or SAE | $99.50/cy |
| Retarder | 3.50/cy |
| Flowable Fill | 85.00/cy |

Sales tax rate would be 5%.

Pricing good through December 31, 2009; any cement increases we may receive after this date will be passed along at our cost.

I appreciate the opportunity to quote this job for you and look forward to the prospect of working with you and your company on this project.

Sincerely,

Brad DeVazier
Arkansas Concrete Co.

# EXHIBIT 4



10/16/2012 08:49 AM











EXHIBIT 5



HILL BROTHERS CONSTRUCTION COMPANY, INC.
WWW.HBCONST.COM

October 16, 2012

Mr. Brad DeVazier
Arkansas Concrete Company
P.O. Box 409
Forrest City, Arkansas 72336

Re: AHTD Roc Roe & White River Relief Structures and Approaches
Purchase Order Number 78400001, Dated May 5, 2009

Dear Mr. Devazier:

This letter is being sent to give formal notice to Arkansas Concrete Company of an issue with the concrete provided by Arkansas Concrete on the deck pours of the above referenced Project. After completing the deck pours, ice bags were detected in the concrete. At this time, it is unknown how many ice bags are in the concrete. As such, the Arkansas State Highway and Transportation Department has requested Hill Brothers take remedial action to resolve the possible compromise in structural integrity of the deck due to the placement of ice bags within the concrete.

At this time, Hill Brothers is not requesting any action from Arkansas Concrete. A final resolution has not been reached by the AHTD. However, this letter is to serve as notice to Arkansas Concrete that any costs and/or damages incurred by Hill Brothers resulting from the defective concrete and Arkansas Concrete's negligence in preparing the concrete will be assessed to Arkansas Concrete. Hill Brothers expects to incur costs and damages due to project delays and corrective measures which will be ordered by the AHTD, including the possibility of replacing the alleged defective deck.

If you have any questions, please do not hesitate to contact me.

Sincerely,

James "Trey" Gunn, III, Esq.
General Counsel

# EXHIBIT 6



## HILL BROTHERS CONSTRUCTION COMPANY, INC.
WWW.HBCONST.COM

December 12, 2012                    7840-00134

Arkansas Highway & Transportation
Department
Attn: Jason Sjulin
533 N. Sebastian
West Helena, AR 72390

Re: Roc Roe & White River Relief
    AHTD Job Number: 110503
    Clarendon, AR

Sub: Ice Bag Warranty for Bridge Deck

Mr. Sjulin,

HBCC agrees to the warranty terms as outlined in AHDOT letter dated December 12, 2012 which
is attached.

Sincerely,

Sterling D. Akers, P.E.
Vice President

# ARKANSAS STATE HIGHWAY
# AND
# TRANSPORTATION DEPARTMENT

Scott E. Bennett
Director
Telephone (501) 569-2000
Voice/TTY 711



P.O. Box 2261
Little Rock, Arkansas 72203-2261
Telefax (501) 569-2400
www.arkansashighways.com

533 North Sebastian Street
West Helena, AR  72390
December 12, 2012

RE: JOB NO. 110503
FAP NO. BRN-0048(21)
ROC ROE & WHITE RIVER RELIEF STRS. & APPRS.
(CLARENDON) (F)
MONROE COUNTY
WARRANTY RESPONSE

Hill Brothers Construction Company, Inc.
Attn: Mr. Sterling Akers
P. O. Box 131
Falkner, MS 38629

Dear Mr. Akers:

As requested, we have reviewed your proposal to warranty bridge deck Units 4, 5, 6, & 7 on the above-referenced project and bridge for a two-year period ending 12/31/2014.

We will accept your proposed warranty under the following conditions:

- Hill Brothers Construction Company will repair or replace any portion of bridge deck Units 4, 5, 6, & 7 that, in the opinion of the Department, is defective due to the presence of ice bags.

- Any deficiencies found in the bridge deck resulting from the presence of ice bags will be repaired or replaced at Hill Brother's expense within 7 calendar days from notification by AHTD, or at the direction of the Engineer. Failure to repair the bridge deck within 7 calendar days after notification by AHTD may result in the Department proceeding with repairs at the expense of Hill Brothers Construction Company.

- The severity or the location of a deficiency may necessitate that the repairs be made in less than 7 calendar days.

- All work required to make repairs, including mobilization, maintenance of traffic and necessary traffic control devices, will be at no cost to the Department.  Repair methods must be approved by the Engineer.

- A semi-final acceptance of all items of work, other than work associated with ice bag damage, will be completed, however the Project will not have final acceptance until the warranty period expires.

- Hill Brothers provides a letter to the Department agreeing to these conditions.

Mr. Sterling Akers                        Page 2                    110503 Warrant Response

This warranty requires a Change Order which will be processed to document the acceptance of the warranty.

If you have any questions, please contact this office.

Sincerely,

Jason Sjulin
Resident Engineer

cc: Mr. Mike Sebren, State Construction Engineer
    Mr. Ray Woodruff, District Engineer
    File

# EXHIBIT 7

LAW OFFICES

# MANIER & HEROD

A TENNESSEE PROFESSIONAL CORPORATION

ONE NASHVILLE PLACE
SUITE 2200
150 FOURTH AVENUE NORTH

NASHVILLE, TENNESSEE 37219-2494

TELEPHONE (615) 244-0030

FACSIMILE (615) 242-4203

(615) 742-9314
DIRECT DIAL NUMBER

JStone@ManierHerod.com
E-MAIL ADDRESS

TERRY L. HILL
TOMMY C. ESTES
JOHN M. GILLUM†
SAM H. POTEET, JR.
DAVID J. DEMING
MARY PATY LYNN LEVAN
JOHN E. QUINN
FRED C. STATUM III
JAMES H. TUCKER, JR.
SARAH HARDISON REISNER
JOHN W. BARRINGER, JR.
JEFFREY S. PRICE†
MICHAEL L. HAYNIE

♦ ALSO LICENSED IN NEW YORK
†ALSO LICENSED IN NORTH CAROLINA
••ALSO LICENSED IN TEXAS

MICHAEL E. COLLINS♦♦
SCOTT C. WILLIAMS†
LAURENN B. DISSPAYNE
DAVID M. DROBNY
HEATHER H. DOUGLAS
JARROD W. STONE♦
JUSTIN D. WEAR♦
PATRICIA TILL•
MELISSA JANE HUGHES
J. PAUL SINGLETON
ROBERT W. MILLER†
TIMOTHY M. LEE

Y ALSO LICENSED IN MISSOURI
‡ ALSO LICENSED IN KENTUCKY
••ALSO LICENSED IN ARKANSAS
LICENSED ONLY IN MICHIGAN AND GERMANY

April 29, 2015

**VIA CERTIFIED MAIL**
Brad DeVazier, President
Forrest City Ready Mix Concrete Co.
d/b/a Arkansas Concrete Company
245 Turner Road
Forrest City, AR 72335

**VIA CERTIFIED MAIL**
W. Frank Morledge, Registered Agent
Forrest City Ready Mix Concrete Co.
d/b/a Arkansas Concrete Company
205 North Washington
Forrest City, AR 72335

|        |             |                                                                                                    |
|--------|-------------|----------------------------------------------------------------------------------------------------|
| Re:    | Project:    | AHTD Roc Roe & White River Relief Structures and Approaches                                          |
|        | Surety:     | Liberty Mutual Insurance Company                                                                     |
|        | Principal:  | Hill Brothers Construction Company, Inc.                                                             |
|        | Supplier:   | Forrest City Ready Mix Concrete Co. d/b/a Arkansas Concrete Company                                  |
|        | Contract:   | Purchase Order Number 78400001, Dated May 5, 2009                                                    |
|        | Subject:    | Claim for Damages Relative to Ice Bags                                                               |

Dear Mr. DeVazier and Mr. Morledge:

My firm represents Liberty Mutual Insurance Company ("Liberty"), who is surety for
Hill Brothers Construction Company, Inc. ("HBCC") on the above-referenced project (the
"Project"). HBCC and Forrest City Ready Mix Concrete Co. d/b/a Arkansas Concrete Company
("Arkansas Concrete" or "Seller") entered into the above-referenced purchase order (the
"Purchase Order"), under which Arkansas Concrete agreed to furnish certain ready-mix concrete
to HBCC in strict accordance with the terms, conditions, plans, and specifications of the prime
contract (the "Prime Contract") between HBCC and the Arkansas State Highway and
Transportation Department (the "Owner") relative to the Project.  I have enclosed a copy of the
Purchase Order for your convenience.

As Mr. DeVazier will recall, ice bags were discovered in the concrete Arkansas Concrete
furnished to HBCC on the Project, which resulted in the Owner forcing HBCC to (a) perform
extensive testing of the in-place concrete and (b) issue a special warranty relative to the concrete
Arkansas Concrete furnished.  By virtue of its contractual and equitable rights, Liberty demands
that Arkansas Concrete immediately tender payment to Liberty in the amount of $86,811.82,
which equals the damages HBCC sustained as a result of Arkansas Concrete's material breach of
the Purchase Order.

973496.1

As set forth more fully in the Purchase Order, Arkansas Concrete is obligated to fully indemnify HBCC for all of the losses, costs, expenses arising from the discovery of the ice bags. In that regard, Paragraph 1 of the Purchase Order states, in pertinent part:

> All material, equipment and other items, including labor and services, if any, referenced in this Purchase Order (hereinafter collectively referred to as "Goods") **shall comply strictly with the terms, conditions, plans and specifications of the Prime Contract for the Project** indicated on the face page hereof, which contract is incorporated herein by reference and made an integral part of this Purchase Order . . . .

(Emphasis added).   With respect to the warranties Arkansas Concrete extended to HBCC, Paragraph 2 states, in relevant part:

> In addition to other warranties, including descriptions, expressly set forth in this PO and in the Prime Contract incorporated by reference, Seller warrants that the Goods supplied hereunder shall be: **new; free from defects in design, workmanship and materials; fit for the purposes intended; and strictly in compliance with all plans and specifications** . . . .  All warranties survive any inspection, delivery, acceptance or payment.  Seller's warranties in this PO are in addition to any other warranties provided by law or by separate agreement . . . .

(Emphasis added).   With respect to Arkansas Concrete's duty to indemnify HBCC for the damages arising from the discovery of the ice bags, Paragraph 14 further provides:

> To the fullest extent allowed by law, Seller shall defend, indemnify, reimburse, save harmless and exonerate [HBCC] and the Owner from and against all claims, liabilities, losses, expenses and damages, of whatever nature, including without limitation, attorneys' fees and consequential damages, **which are alleged to arise from or be caused by, in whole or in part, any act or omission of Seller with respect to this PO or to the subject Project.**  Seller's obligations under this paragraph shall apply to any personal injury, sickness, death, property damage, economic loss and additional expense of any kind **for which Seller's conduct or Goods are alleged as a cause or contributing factor.**  Seller's indemnity and defense obligations shall survive acceptance and payment of the Goods.  Should any delay by Seller, nonconformance of Goods, or nonperformance by Seller cause or contribute to any delay to the Project or to any increased costs, losses, or consequential damages to [HBCC] or to the Owner, Seller shall pay, indemnify and exonerate [HBCC] for any liquidated or actual damages assessed by the Owner against [HBCC] and also for [HBCC]'s costs, expenses, and losses, including attorneys' fees and consequential damages.

(Emphasis added).   By assignment and by virtue of becoming equitably subrogated to HBCC's rights thereunder, Liberty is entitled to enforce Arkansas Concrete's obligations under the Purchase Order and is entitled to receive payment from Arkansas Concrete relative to the

damages arising from the discovery of the ice bags in the concrete furnished by Arkansas Concrete.

As Arkansas Concrete and its insurer were notified in December of 2012, HBCC incurred the following cost/expenses while investigating, testing, and formulating a solution to the problems arising from the discovery of the ice bags:

| Overhead Expenses | $42,800.00 |
|-------------------|------------|
| Airplane Expenses | $4,400.00 |
| Jobsite Expenses | $39,611.82 |
| **Total Expenses** | **$86,811.82** |

Accordingly, Liberty demands that Arkansas Concrete immediately tender payment to Liberty in the amount of $86,811.82, or Liberty will be forced to enforce Arkansas Concrete's obligations under the Purchase Order through arbitration and/or litigation. The foregoing demand does not include attorney's fees that have been incurred by Liberty with respect to this matter. If payment is received by Liberty prior to Friday, May 22, 2015, then Liberty will agree to waive it right to recover the legal fees that it has incurred in connection with this matter. In the meantime, Liberty continues to reserve any and all of its rights, remedies, and defenses, at law or in equity.

Very truly yours,

MANIER & HEROD,
A Tennessee Professional Corporation

Jarrod W. Stone

JWS
cc:    John O'Donnell (via e-mail)
       Mary LeVan (via e-mail)

973496.1

## PURCHASE ORDER

### HILL BROTHERS CONSTRUCTION COMPANY, INC.

**TO:**   Arkansas Concrete Company
PO Box 409

Forrest City, AR  72336

870-633-4010          870-633-4013

**ORDER NO:**  78400001
**DATE:**  5/5/2009
**JOB NAME:**  AHTD Monroe County
**JOB:**  7840

**SHIP TO:** Hill Brothers Construction Company

**BILL TO:**  Hill Brothers Construction Company
20831 Hwy 15 North, P.O. Box 131
Falkner, MS 38629

**FREIGHT:**                                                **DELIVERY REQUIRED:**

SHIP THE FOLLOWING ITEMS AND DO ALL WORK IN STRICT ACCORDANCE WITH THE PLANS AND SPECIFICATIONS FOR THE JOB INDICATED

| ITEM | COST CODE | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|------|-----------|-------------|----------|------|------------|--------|
| 00001 | 028-POR | Class S & E(AE) | 194.00 | CY | $99.50 | $19,303.00 |
| 00001 | 029-POR | Class S & E(AE) | 115.00 | CY | $99.50 | $11,442.50 |
| 00001 | 030-POR | Class S & E(AE) | 12.00 | CY | $99.50 | $1,194.00 |
| 00001 | 079-POR | Class S & E(AE) | 30.00 | CY | $99.50 | $2,985.00 |
| 00001 | 091-POR | Class S & S(AE) | 4,080.00 | CY | $99.50 | $405,960.00 |
| 00001 | 092-POR | Class S & S(AE) | 5,489.00 | CY | $99.50 | $546,155.50 |
| 00002 | 012-000 | Flowable Fill | 89.00 | Cy | $85.00 | $7,565.00 |

*\* ANY CEMENT INCREASE AFTER 12/31/09 WILL BE PASSED*
*ALONG AT OUR COST PER QUOTE.*
*\* MUST RECEIVE PAYMENT FOR PREVIOUS MONTHS BUSINESS*
*BY 15TH OF FOLLOWING MONTH. Net 30 days from Invoice. SDA*

**SUBTOTAL**  $994,605.00
**TAXES**  $0.00
**TOTAL**  $994,605.00

Note:
Rebated will be billed at $3.50 per cubic yard.
Prices are F.O.B. Jobsite.
Material to be furnished when ordered by jobsite superintendent.
Applicable Sales Tax will apply.
All material must be in strict accordance with the plans and specifications.

THIS PURCHASE ORDER, SET FORTH ABOVE, IS LIMITED SOLELY TO THE TERMS AND CONDITIONS ON THE ATTACHED PAGE. NO
ADDITIONAL OR DIFFERENT TERMS SHALL BECOME A PART OF THIS PURCHASE ORDER WITHOUT THE PRIOR WRITTEN CONSENT OF
AN AUTHORIZED REPRESENTATIVE OF HILL BROTHERS. SELLER'S ACCEPTANCE, WHETHER BY CONDUCT OR WRITTEN
ACKNOWLEDGEMENT, IS LIMITED SOLELY TO THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER.

Accepted: _Arkansas Concrete Co._
By: _Gregg A Dwyer_
Date: _6/3/09_

HILL BROTHERS CONSTRUCTION COMPANY, INC.

By: _7-9-09_  _Sterling D. Allen_

GLEN DUNLAP
662-316-2922

### HILL BROTHERS CONSTRUCTION COMPANY, INC.

### PURCHASE ORDER

# TERMS & CONDITIONS

1. **INCORPORATION OF PRIME CONTRACT.** All material, equipment and other items, including labor and services, if any, referenced in this Purchase Order (hereafter collectively referred to as "Goods") shall comply strictly with the terms, conditions, plans and specifications of the Prime Contract for the Project indicated on the face page hereof, which contract is incorporated herein by reference and made an integral part of this Purchase Order ("PO"). In the event of any ambiguity or conflict between the Prime Contract and this PO, this PO shall govern and control, except that under no circumstances shall Seller have any greater rights, remedies, or entitlements against HILL BROTHERS CONSTRUCTION COMPANY, INC. ("HILL BROTHERS") with respect to this PO or the Goods hereunder than HILL BROTHERS has against Owner under the Prime Contract for same.

2. **APPROVAL OF GOODS.** At Seller's expense, Seller shall promptly submit to HILL BROTHERS samples and drawings, product data, samples and other information ("Submittals") related to the Goods or as may be otherwise requested by HILL BROTHERS. Submittals shall be subject to the approval of the Owner, architect, engineer and HILL BROTHERS before any fabrication commences. Seller shall not specify any materials in HILL BROTHERS, Owner, architect, and engineer to all material deviations from any requirements of the Prime Contract and of this PO, including proposed "equal" substitutions. Approval of Submittals shall not constitute acceptance, unless there is express and specific approval of the deviation itself given in writing by HILL BROTHERS and the Owner before performance of the deviation. Any changes or substitution of materials or any other proposal of Seller, which may be approved, shall be Seller's sole risk and full responsibility. Seller shall pay HILL BROTHERS for all additional costs, including job delays and disruptions in performance, incurred by HILL BROTHERS or others as a result of defective or nonconforming goods, including changes or substitutions not specifically authorized in advance.

3. **RISK OF LOSS AND TITLE.** Seller shall bear the risk of loss and risk of damage to Goods until delivered to HILL BROTHERS in accordance with the terms on face page of this PO, property determined to be conforming. To assure Seller's faithful performance of this PO, Seller grants to HILL BROTHERS a security interest in all Goods which are identified to or referenced by this PO. Title to the Goods passes to HILL BROTHERS upon Seller's delivery of conforming Goods to HILL BROTHERS in accordance with the terms on the face page of this PO. Neither the transfer of risk of loss nor passing of title shall diminish or adversely affect warranty, indemnity, and other obligations of Seller under this PO.

4. **WARRANTIES.** In addition to any other warranties, including descriptions, expressly set forth in this PO and in the Prime Contract incorporated by reference, Seller warrants that the Goods supplied hereunder shall be: new, free from defects in design, workmanship and materials; fit for the purposes intended; and strictly in compliance with all plans and specifications. Seller's warranties shall extend either for the warranty period specified in the Prime Contract or, if no period is specified, for one (1) year after final payment by HILL BROTHERS to Seller. Any replacement of materials or corrections to conformity shall be additionally warranted as above for a period of one (1) year after the date of remedying said defect or for such longer period of time as may be provided by the Prime Contract. Seller acknowledges that, notwithstanding any drawings, specifications, samples or other descriptions of Goods set forth in this PO, HILL BROTHERS is relying on Seller's skill and judgment to furnish Goods suitable for the purposes of the Project described herein. All warranties survive any inspection, delivery, acceptance or payment. Seller's warranties in this PO are in addition to any other warranties provided by law or by express agreement. HILL BROTHERS may demand and Seller shall provide adequate security, by bond or other means acceptable to HILL BROTHERS, that Seller will comply with this PO, including all warranties.

5. **TIME OF PERFORMANCE.** Time is of the essence for this PO. Seller accepts HILL BROTHERS' right to schedule performance and deliveries by Seller of the Goods and to adjust such schedules as HILL BROTHERS in good faith deems best for the Project as a whole. Deliveries are to be made strictly in accordance with HILL BROTHERS' schedule and directions, as may be adjusted by HILL BROTHERS, as to time, quantities, and location. Seller shall arrange and pay for suitable storage of all Goods delivered, regardless of the location specified for delivery. HILL BROTHERS reserves the right to cancel, reject or refuse any delivery made prior to or subsequent to the times specified. If delivery schedules cannot be maintained, Seller shall be liable for all costs and damages of whatever nature, resulting from the Seller's failure to deliver, occurring to HILL BROTHERS' schedule. Goods in strict accordance with the plans and specifications and approved by the Owner; such costs and damages can be included and/or as otherwise defined by estimating balance otherwise owed Seller under this or any other PO. Further, such costs and damages include but are not limited to any liquidated or actual damages sustained by the Owner against HILL BROTHERS and any other costs, losses, and damages incurred by HILL BROTHERS because of delays or difficulties attributable to Seller's late and/or defective performance. Payment to Seller for payable submittals as and when required so Seller's failure to provide conforming Goods as warranted in this PO or Seller's failure to maintain delivery as scheduled are, jointly and severally, material breaches of this PO and shall entitle HILL BROTHERS to terminate this PO for default.

6. **INSPECTION, ACCEPTANCE AND CANCELLATION.** HILL BROTHERS and its authorized representatives shall have the right, but not the obligation, to inspect the Goods at all reasonable times and places during manufacture and before and after delivery. Acceptance of any part of the Goods required by this PO shall not bind HILL BROTHERS to accept future shipments, nor deprive HILL BROTHERS of the right to return Goods already accepted or to exercise any other remedy while HILL BROTHERS may have. Payment for Goods prior to inspection shall not constitute acceptance and is without prejudice to any claim HILL BROTHERS may have against Seller. Rejected Goods shall be held for Seller's instructions at Seller's risk, and all returns shall be at Seller's expense. If Goods are to be returned to Seller for any reason, Seller shall, before said Goods are removed from the Project site, give to HILL BROTHERS written notice specifying all alleged damages, missing parts or losses, and all other claimed reduction in value of said Goods, and Seller shall afford HILL BROTHERS an opportunity to inspect said Goods and any Project site before final delivery. Seller's failure to give HILL BROTHERS the foregoing required written notice is an opportunity to inspect shall constitute Seller's waiver of claims and release of HILL BROTHERS.

7. **PRICE.** The Price for all Goods shall be as stated on the face page of this PO. Price includes all federal, state, and local taxes and all freight, delivery and other charges of whatever kind or nature. If Price is not stated in this PO for any item, Goods shall be billed at the price as quoted or the prevailing market price, whichever is lower. If Seller's invoices are subject to a cash discount, the discount period shall commence on the later of delivery of conforming Goods or the date of the invoice. During the term of this PO, Seller shall give HILL BROTHERS the benefit of all trade discounts, rebates, or price reductions offered to any other party with respect to the same or substantially similar items as the Goods covered by this PO.

8. **CHANGES.** HILL BROTHERS may, by written order, make changes to the quantity and/or scope of this PO and Seller shall be obligated to perform such changes, with the purchase price being adjusted accordingly. No price increases or additional charges of any kind will be valid unless Seller obtains a written change order from HILL BROTHERS before Seller incurs any extra costs. Seller shall give written notice to HILL BROTHERS of any changes or extra costs, of whatever nature, at least five (5) working days prior to the time the Prime Contract requires HILL BROTHERS to give notice of same to the Owner; otherwise, Seller's claims shall be waived. For any changes to this PO, Seller shall be limited to an increase in the price and/or an extension in time to the extent of prior increases and time extensions that HILL BROTHERS, on behalf of Seller, actually receives from the Owner.

9. **PAYMENT.** Before submitting any invoice or otherwise requesting payment from HILL BROTHERS, Seller shall have paid through the date of invoices or request for payment all labor, services, material, supplies, equipment and other charges relating to the Goods and obligations covered by this PO. Subject to the terms and conditions of this PO, HILL BROTHERS agrees to pay Seller's approved invoices, less retainage, for conforming Goods timely delivered and otherwise suitably stored at the Project or incorporated into the work with thirty (30) days after HILL BROTHERS' receipt of funds from Owner. Notwithstanding anything in this PO, the Prime Contract, or any other document to the contrary, HILL BROTHERS' actual receipt of payment from the Owner for Seller's Goods shall be an absolute condition precedent to any right of Seller to receive payment from HILL BROTHERS for such Goods. Seller's acceptance of payment constitutes a general release of HILL BROTHERS' every lien and other claims and liability of whatever nature, whether known or unknown, which arise out of or relate to events occurring through the date of payment. Seller's acceptance of final payment shall constitute a full release of HILL BROTHERS from all claims and liabilities arising under or related to any way to this PO. No payment, including final payment, shall be construed as acceptance of conforming Goods, and Seller shall remain responsible for full performance in strict compliance with this PO. Seller and Seller's material men shall furnish affidavits, lien waivers, releases of claims, and such other documents as may be required by HILL BROTHERS in evidence of compliance with this PO. Seller shall furnish a final lien waiver and final release of claims, which may be made subject to receipt of final payment.

10. **TERMINATION BY HILL BROTHERS.** Seller's failure to comply strictly with terms and conditions of this PO shall entitle HILL BROTHERS to terminate this PO for default, to take possession and assume ownership of all Goods made by Seller; to procure Goods, in whole or in part, elsewhere and to charge Seller with all costs, expenses, and damages of whatever nature including, without limitation, attorneys' fees and consequential damages arising from or attributable to said default. In the event of termination for default, Seller shall not be entitled to any further payments until all requirements of this PO have been fully satisfied and until final payment has been actually received by HILL BROTHERS from the Owner, and then only to the extent the unpaid PO balance exceeds all costs, expenses, and damages incurred by HILL BROTHERS in completing the PO requirements and sustained by HILL BROTHERS as a result of Seller's default.

In addition to termination by default, HILL BROTHERS reserves the right, at any time and for its convenience and without Seller's consent, to terminate this PO in whole or in part by written notice to Seller. Seller, however, acknowledges that it has no right or privilege to terminate this PO without HILL BROTHERS' written consent. In the event of such convenience termination upon receipt of notice of termination from HILL BROTHERS, Seller shall stop shipments immediately, except as otherwise directed by HILL BROTHERS. If Seller is not in default of any of its obligations hereunder at the time of such termination, HILL BROTHERS shall pay to Seller, at Seller's sole and exclusive remedy, just any applicable offsets, an amount equal to (a) reasonable and documented costs (the "Costs") incurred by Seller prior to the notice of termination, plus (b) a flat ("Fee") not to exceed ten percent (10%) of the Costs, for Seller's provable overhead and profit, and such other reasonable compensation for all other amounts to which Seller may be entitled, including without limitation indirect expenses, overhead, administrative costs, depreciation and profit, provided, however, that in no event shall the payments specified herein, plus prior payments, exceed the purchase price of the Goods; likewise, in the event of a termination by the Owner, HILL BROTHERS' liability hereunder shall not in any event exceed the amounts actually received by HILL BROTHERS on behalf of the Seller.

If HILL Brothers terminates the PO for default but it is determined that Seller was not in default or of any noted notice, the termination will be regarded as for HILL BROTHERS' convenience and Seller's sole and exclusive remedy shall be amounts payable under the convenience termination provisions above. In no event shall Seller be entitled to special, consequential, or exemplary damages, nor shall Seller recover any lost or anticipatory profits alleged to have resulted from termination of this PO. Regardless of whether the termination is for Seller's default or for HILL BROTHERS' convenience, all Goods completed or partially completed prior to termination shall become the property of HILL BROTHERS, at HILL BROTHERS' option, the salvage value of the Goods may be deducted from any amount due Seller by reason of termination. HILL BROTHERS reserves all rights and remedies provided by law, in addition to those set forth herein.

11. **ASSIGNMENTS.** Without the prior written consent of HILL BROTHERS, Seller shall not make any contract with any other entity for furnishing any of the Goods in this PO, or assign this PO or any right hereunder. Seller shall not assign any amounts due or to become due under this PO without written notice to HILL BROTHERS at least thirty (30) days before such amounts are due to be paid by Seller. HILL BROTHERS' acceptance or acknowledgment of any assignment shall not constitute any approval or admission by HILL BROTHERS that the sum assigned or any amount whatsoever is owed to Seller. Seller shall remain fully liable to HILL BROTHERS for performance of this PO even if HILL BROTHERS assigns rights or delegates duties.

12. **DISPUTES.** This PO is made in, and shall be governed by the laws of, Mississippi. Any claims or disputes arising out of or related to this PO shall be resolved by binding arbitration in accordance with the current and applicable rules and procedures of the American Arbitration Association, except that if HILL BROTHERS may, at its option, join any claim, dispute, or matter in controversy with Seller who involves rights or liabilities of the Owner, Architect, or other third party, then, at HILL BROTHERS' sole election, Seller agrees to resolve such issues in the same forum or proceeding, including arbitration, court, or administrative authority, which has jurisdiction over some or all claims, disputes, and matters in controversy involving the Owner, Architect, or other third party so as to promote economy and avoid inconsistent results.

HILL BROTHERS and Seller intend and agree that the foregoing dispute resolution provisions and rights of election given HILL BROTHERS are not independent of or severable from the remainder of this PO and that such provisions and election rights are supported by the consideration and mutuality of the PO as a whole. The venue for any arbitration or litigation, if so elected by HILL BROTHERS, shall be at the location of the Project, unless HILL BROTHERS agrees to designate another locale to facilitate joinder of parties, to consolidate claims, or for any other reason.

74400001

**HILL BROTHERS CONSTRUCTION COMPANY, INC.**

**PURCHASE ORDER**

# TERMS & CONDITIONS

Should HILL BROTHERS through litigation, arbitration, or other means seek to recover on any money bond given by Seller under this PO, Seller and its surety, jointly and severally, agreed to pay HILL BROTHERS all costs, expenses, and attorneys' fees incurred in the investigation, preparation, and trial or hearing of such matters and otherwise reasonably related thereto.

If HILL BROTHERS and Seller litigate or arbitrate a monetary claim, not otherwise prohibited by this PO, the party found liable in such proceeding will pay the other party's reasonable and necessary attorneys' fees. If less than the full amount of such monetary claim is awarded, the party asserting such claim ("claimant") shall recover reasonable and necessary attorneys' fees (but not contingent fees) equal to the proportion of the amount awarded to the amount claimed, and the other party shall pay the other party's reasonable and necessary attorneys' fees (but not contingent fees) equal to the proportion of the amount denied to the amount claimed. Notwithstanding the existence of any dispute, claim, or matter in controversy, Seller is obligated to and shall proceed diligently with complete and timely performance of this PO.

**13.**    **COMPLIANCE WITH LAWS.** Seller shall comply with all laws, ordinances, codes, safety requirements, and regulations of whatever nature that apply to this PO that are otherwise effective for the duration. Unless otherwise exempt, Seller's obligation includes but is not limited to compliance with the provisions of paragraph (1) through (7) of Part 202 of Executive Order 11246, as amended, the affirmative action for handicapped workers clause set forth in 41 CFR 60-741.4, and the affirmative action for disabled veterans and veterans of the Vietnam era clause set forth in 41 CFR 60-250.4, which are incorporated by reference herein. The Seller has exclusive liability for obtaining all licenses, certifications, or other approvals as may relate to the Seller's performance on the project or any laterally its performance of the Subcontract work. Seller hereby represents and warrants that the Goods hereunder are produced, manufactured, sold, packaged, marketed, transported or stored in violation of any federal, state or local law and do not violate or infringe upon any patent, trademark or other rights of third parties. Seller shall have full and exclusive liability for the payment of all licenses, grant receipts, sales, use, or any other taxes applicable to materials, equipment, labor, or services relating to the Goods and obligations covered by this PO. In the event HILL BROTHERS pays any such tax or payment on behalf of Seller, Seller agrees to fully reimburse HILL BROTHERS upon demand for the amount thereof (including proof fee and interest).

Further, Seller hereby represents, warrants, and covenants to Contractor that Seller (i) has complied, and shall at all times during the term of this Contract comply in all respects with all immigration laws, statutes, rules, codes, orders and regulations, including, without limitation, the Immigration Reform and Control Act of 1986, as amended, the Immigration and Nationality Act, as amended, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as amended, and, for Mississippi projects, the Mississippi Employment Protection Act of 2008 (regulating Employer's adherence to the federal government's E-Verify Program), as amended, and any successor statutes, laws, regulations and rules thereto (collectively, the "Immigration Laws"), (ii) has properly maintained, and shall at all times during the term of this Contract properly maintain, all employment records required by the Department of Homeland Security (the "DHS"), including, without limitation, the completion and maintenance of the Form I-9 for each of Seller's employees, and (iii) has responded, and shall respond, to all forms during the term of this Contract respond in timely fashion to any inspection requests related to such I-9 Forms by DHS or to social security number "mismatches" referred to in communications from the Social Security Administration like "SSA"). During the term of this Contract, Seller shall, and shall require any Sub-Seller, to permit the payment of all licenses, grant receipts, sales, use, or any other taxes agents and employees, to fully cooperate in all respects with any audit, inquiry, inspection, or investigation that may be conducted by the DHS or Seller or any of its employees.

Seller shall maintain photocopies of all supporting employment eligibility and identity documentation (the "Documents") for all employees who are hired by Seller and shall require any Sub-Seller, if any, to attest to and comply with this requirement in written form. If Contractor becomes aware of evidence which, in Contractor's sole discretion, appears to be reasonably credible, that an undocumented worker has performed work on or been associated with work performed by the Seller or any Sub-Seller related to this Contract, Seller shall, at its own expense, immediately perform an audit of the Documents relating to its employees. Upon written request by Contractor, the documents shall be provided to Contractor for review within two (2) business days of such written request. If Seller breaches any provision of this Article 13, Contractor may terminate this Contract immediately, in its sole discretion.

**14.**    **INDEMNITY.** To the fullest extent allowed by law, Seller shall defend, indemnify, reimburse, save harmless and exonerate HILL BROTHERS and the Owner from and against all claims, liabilities, losses, expenses and damages, of whatever nature, including without limitation, attorneys' fees and consequential damages, which are alleged to arise from or be caused by, in whole or in part, any act or omission of Seller with respect to this PO or to the subject Project. Seller's obligation under this paragraph shall apply to any personal injury, sickness, death, property damage, economic loss and incidental expense of any kind for which Seller's product or Goods are alleged as a cause or contributing factor. Seller's indemnity and defense obligations shall survive acceptance and payment of the Goods. Should any delay by Seller, nonperformance of Goods, or nonperformance by Seller cause or contribute in any delay to the Project or to any incurred costs, losses, or consequential damages to HILL BROTHERS or to the Owner, Seller shall pay, indemnify and exonerate HILL BROTHERS for any liquidated or actual damages assessed by the Owner against HILL BROTHERS and also for HILL BROTHERS' costs, expenses, and losses, including attorneys' fees and consequential damages.

**15.**    **ENTIRE AGREEMENT/NO WAIVER.** This PO represents the complete and integrated agreement between HILL BROTHERS and Seller, and it supersedes all prior negotiations, whether written or oral. Except as set forth in paragraph 11, the terms and conditions of this PO are severable and the validity or unenforceability of any term or condition of this PO shall not invalidate, render unenforceable, or adversely affect the remaining terms and conditions. This PO requires no prior and indefinite performance by Seller, notwithstanding payments to Seller in installments. This PO cannot be amended, modified or terminated except in writing signed by an authorized representative of HILL BROTHERS. This PO is binding upon and enforceable by the successors in interest of HILL BROTHERS and Seller. The failure or delay by HILL BROTHERS to exercise rights or remedies is not cumulative, and a waiver of such rights as to any continuing or subsequent noncompliance.

**16.**    **COURSE OF DEALING.** HILL BROTHERS and Seller agree that the Standard Terms and Conditions, Sections 1 through 16, establish a course of dealing between them and shall apply to this and all other projects, unless other HILL BROTHERS or Seller gives written notice of objection in any term or condition before commencement of performance in connection with any other project. Otherwise, Seller's manufacture, identification, commencement of preparation of furnishing, shipment of Goods, or any other act employment with acceptance, shall constitute the agreement of HILL BROTHERS and Seller that these Standard Terms and Conditions apply to such project and constitute a waiver by both parties of all objections to any of the Standard Terms and Conditions even if a PO has not been fully executed at the time such performance commences. HILL BROTHERS and Seller are entitled to specific performance of this provision with respect to future projects.

**17.**    **SAFETY.** Seller shall comply fully with all rules and regulations of OSHA and any other authority having jurisdiction over Seller's operations, and Seller shall adhere also to all additional and/or more stringent requirements of the most current Contractor's Safety Policy which is incorporated herein by reference and copies of which are available to Seller upon request.

# HILL BROTHERS CONSTRUCTION & ENGINEERING CO., INC.

## PURCHASE ORDER

# NONDISCRIMINATION

**(Applicable to Federal-aid construction contracts and related subcontracts and purchase orders exceeding $10,000.)**

April 6, 2009                78400001

*Batker Ready*
*Jeff Kirkdoffer —*

Attn: Randel
Hill Bros. Construction, Inc.
P. O. Box 131
Falkner, Ms 38629-0131

Re: Ahtd Job #110503-Clarendon, Ar

Dear Randel:

Please accept this letter as our firm commitment to provide ready-mixed
concrete for the project mentioned above as follows:

| | | |
|---|---|---|
| Class S or SAE | $99.50/cy | |
| Retarder | 3.50/cy | |
| Flowable Fill | 85.00/cy | |

Sales tax rate would be 6%.

Pricing good through December 31, 2009; any cement increases we may
receive after this date will be passed along at our cost.

I appreciate the opportunity to quote this job for you and look forward to the
prospect of working with you and your company on this project.

Sincerely,

Brad DeVazier
Arkansas Concrete Co.

P. O. Box 759
Forest City, AR   72336
870 633 4676
870 633 4613 FAX

*Plants*
*Forest City*
*Brinkley*
*Wheatley*
*West Helena*
*Wynne*